# Appeal of Waynesburg College.

The making and delivering, to the payee therein named as trustee for another, a check for safe keeping, payable six months after the death of the maker, is not sufficient to establish a gift *inter vivos*, nor to create a trust which equity will enforce.

Trough's Estate, 25 P. F. Smith, 115, followed.

November 2d, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Allegheny County*: Of October and November Term, 1885.

Appeal of the Waynesburg College from the decree of said court overruling exceptions of appellant to report of auditing judge and decreeing payment of the fund for distribution, in accordance with the schedule prepared by the auditing judge.

The following are the facts as found by the auditing judge (OVER, J.):

Alexander Postley died testate on the 29th of March, 1880. Three weeks prior to his death, during his last illness, he executed and delivered to his daughter, M. F. Postley, the trustee

therein named, the following check, for which there was and is no consideration:

Pittsburgh, January 20th, 1880.

The Iron City National Bank,

Pay to M. F. Postley, trustee for the trustees of the Waynesburg College, one thousand dollars, six months after my death.

$1,000.00 ALEXANDER POSTLEY.

This he stamped and cancelled. He stated to his daughter, who was present when the check was executed, that he had ante-dated it. He told her to lay it in a safe place. She laid it in the book case under some books. He then had over $1,000 in bank, which remained there until after his death, and has been since drawn out by the executors and is included in this account. A few days before his death, while advising with his counsel about the preparation of a will, he told him about this check, and he advised the testator to make the provisions for the college in his will. He directed this to be done, and in the fourth clause of it bequeathed one thousand dollars to the college, directing it to be paid six months after his death. He executed the will the evening before his death, and after its execution his counsel directed Miss M. F. Postley, his daughter, to destroy the check. She inquired of her father if she should do so, but received no answer. She kept it and delivered it after his death to one of his executors.

The executors settled their first and final account, showing a balance of $19,449.54 in their hands. In a proceeding to distribute this balance in the court below, the Waynesburg College claimed to be allowed out of the fund for distribution the $1,000 specified in said check, with interest thereon from the 30th day of September, 1880. The court were of opinion that the check was testamentary, and not having been admitted to probate, it was held not to be entitled to payment out of the estate.

In rejecting the claim of the Waynesburg College, the auditing judge filed the following opinion:

An essential element common to gifts, *inter vivos* and *causa mortis*, is the delivery of the thing given. It is indispensable and may be made either to the donee immediately or to another for him: Michener *v.* Dale, 23 Pa. St., 63. The check which is the foundation of the claim presented by the Waynesburg College, having been made payable to the order of, and delivered to a trustee for the college, it is evident that the delivery of the check itself was complete; but it does not follow that this was equivalent to a delivery of the gift. Had it been payable like checks ordinarily on demand, it seems clear upon

[Appeal of Waynesburg College.]

reason and authority that it would not have been.   It would not have operated as an assignment of the fund, and had there been sufficient funds to meet it, and payment been refused, the college would have had no right of action against the bank : Morse on Banking, 36,275; Greenfield's Estate, 24 Pa. St., 232; National Bank *v.* Gish, 72 Id., 13 ; Bank *v.* Millard, 10 Wall., 152 ; Saylor *v.* Bushong, 30 Pittsburgh Legal Journal, 105.   The gift of such a check is only the gift of a promise, Morse, 382; and is but a parol executory promise, without consideration to make a gift, which would not be executed until the check was accepted or paid ; the death of the drawer before acceptance or payment would revoke it, and the gift would therefore fail : Yard *v.* Patton, 13 Pa. St., 284–5 ; Campbell's Estate, 7 Id., 100 ; Simmons *v.* Savings Bank, 31 Ohio St., 457 ; National Bank *v.* Williams, 13 Mich., 291 ; Hewitt *v.* Kaye, 6 L. R. Eq., 198; Nicholas *v.* Adams, 2 Wharton, 24. In Gourley *v.* Linsenbigler, 51 Pa. St., 349, there seems to be a dictum by Mr. Justice READ that the check of the donor on his banker is the proper subject of a donation *causa mortis*, but the question was not before the court.   Moreover, in one of the cases cited to support this dictum (Boutts *v.* Ellis, 31 Eng. L. Eq., 174), the check was paid before the donor's death, and in the other case (Harris *v.* Clark, 3 Comstock, 93–114), it was held by a majority of the court that such a check unaccepted is not valid as a gift *causa mortis*.   And in Rhodes *v.* Childs, 64 Pa. St., 24, where the dictum is cited as authority, the donor was payee in the check, which was the subject of the gift, and the money appears to have been drawn prior to his death by the donee.   These cases then cannot be considered authorities in point.   It is argued however, that as this check was not payable until six months after the drawer's death, it was not revoked, as by its terms it could not be paid or accepted in his lifetime, and that its delivery therefore made it a valid gift of the money specified in it, either *inter vivos* or *causa mortis*.   The principal case relied upon to support this argument is Lawson *v.* Lawson, 1 Peere Williams, 441.   In that case A., during his last illness, drew a bill upon a goldsmith for the payment of one hundred pounds to his wife, with a written indorsement that the money was to buy her mourning, and although it was not paid or accepted during A.'s lifetime, it was held that it was a valid *donatio causa mortis*, because it was evident he intended the authority should be exercised after his death.   But it seems clear under later English authorities that the bill was a testamentary disposition, and not a gift *causa mortis*.

It seems equally clear, also, that the direction in this check, that it is not to be paid until after the drawer's death, makes

it testamentary. In Frew v. Clarke, 80 Pa. St., 178, it is said that no form of words is necessary to make a valid will. The form of the instrument is immaterial if the substance is testamentary. In Turner v. Scott, 51 Pa. St., 132, it is said that the essence of a will is that it is a disposition to take effect after death. And in Kellcher v. Kernan, 16 Md., 440, that when an instrument does not operate *inter vivos*, but is made to depend for its whole operation upon the death of the maker to consummate it, then it can only take effect as testamentary. It is immaterial that there are no directions to the executors to pay the money; this not being one of the requisites of a testamentary paper. Moreover. it has been expressly ruled in England that checks of this kind are testamentary. In Bartholomew v. Brown v. Henley, 3 Philimore, 317, three checks which the testator indicated by indorsements on the margin of his check book were not to be paid until after his death, were held to be testamentary, and were admitted to probate as a codicil to his will. In Gladstone v. Tempest, 2 Curties, 650, the testator drew two checks on his banker in favor of two of his servants, and delivered them sealed up with the direction that they should be presented after his death, and they were admitted to probate as part of his will by the Ecclesiastical Court. See same (Walsh v. Gladstone, 1 Phillips' C. C., 293), where the Court of Chancery held the legacies given by the checks were revoked by testator's subsequent will. In Jones v. Nickolay, 2 Robertson, 288, it was held that a paper was admissible to proof as a codicil to a will, which was in the form of an order on a banker to pay at twelve days' sight a sum of money to a certain person, duly executed, but containing no reference to the will. And it was said that a paper clearly not intended as a part of the will of a testator, not on the face of it testamentary, yet, where it was not to have consummation till after his death, was part of his will if not revoked by subsequent acts.

Mack's & Person's Appeal, 68 Pa. St., 231, is cited as authority to sustain this check as a gift and to show that it is not testamentary. There it is held that a present bond to pay a sum of money at the obligor's death, and delivery renders it perfect as a present obligation and is irrevocable. But the reasons for this conclusion were that the bond was an executed contract, and that the seal imported a consideration which made it strictly *debitum in presenti solvendum in futuro*, and in Carey v. Dennis et al., 13 Md., 1, it is held that where bonds were executed by a father and delivered to a third party, with instructions to deliver them to the obligees, his sons, in case he died without a will, that they were testamentary.

As there seems to be no room for doubt from these author-

ities that this check is testamentary, it can only take effect, if at all, in the manner provided by the statutes relating to wills. Its delivery did not constitute a gift either *inter vivos* or *causa mortis*. It follows, therefore, that the claim presented by the Waynesburg College on it cannot be allowed.

From the final decree of the court rejecting its claim the Waynesburg College took this appeal, assigning for error, inter alia, the decree of the court.

*J. M. Garrison* (*H. Lazear* with him) for the appellants.— The ground upon which this claim is made is that there were moneys on deposit in the Iron City National Bank at the time of Mr. Postley's death which belonged to the claimant as payee in the check, and that these moneys have been improperly reduced to possession by the executors and mingled with the decedent's estate. We therefore asked the court below to decree that the executors restore the money to the proper owner, namely, the payee in the check. It was admitted, and so found by the judge in the court below, that the $1,000 in dispute was included in the fund before the court for distribution.

That the drawing and delivery of the check operates as an assignment, and vests in the payee a right of action against the bank, is, we think, abundantly supported both by reason and authority: See Daniel on Neg. Inst., secs. 1637–38–39–40–43 and 44; Morse on Banking, 473; Fogerties *v.* State Bank, 12 Rich. Law, S. C., 518; Byles on Bills, above; Vanbibber *v.* Bank of La., 14 La. An., 481; Chicago Marine Ins. Co. *v.* Stanford, 28 Ill., 168; Brown *v.* Leckie, 43 Ill., 500; Munn *v.* Burch, 25 Ill., 35; Roberts *v.* Austin, 26 Ia., 316; Lester *v.* Given, 8 Bush, Ky., 361. There are cases, however, the other way: Bank of Republic *v.* Millard, 10 Wall, 152.

But we find no authority to the effect that the drawing and delivery of a check does not operate as an assignment of the fund so far as the drawer is concerned—which is all we contend for in this case. The fact that by the terms of the gift the enjoyment of it was postponed until after the death of the drawer, did not make the instrument testamentary: Mack & Person's Appeal, 8 P. F. S., 231; Hatch *v.* Hatch, 9 Mass., 310, and note; Wheelwright *v.* Wheelwright, 2 Mass., 447; Stephens *v.* Huss, 4 P. F. S., 20.

The will did not revoke the check. See Leading Case in Eq., vol. 1 pt. 2, p. 1230; Nicholas *v.* Adams, 2 Wh., 17. Delivery to one in trust is sufficient: See Id., page 1222, citing Drury *v.* Smith, 1 P. Williams, 405.

A very full and satisfactory exposition of the law in respect to gifts causa mortis is found in 1st vol., pt. 2, Leading Cases

[Appeal of Orphan Asylum of Pittsburgh.]

in Eq., beginning at page 1205. The leading case in England is Ward *v.* Turner, above referred to. The leading case in Pennsylvania is Wells *v.* Tucker, 3 Binney, 370. See also Nicholas *v.* Adams, 2 Wharton, 22; Michener *v.* Dale, 11 Harris, 59; Gourley *v.* Linsenbigler, 1 P. F. S., 350.

*W. S. Purviance* and *Walter Lyon,* for appellees, were not heard.

The opinion of the court was filed January 4th, 1886.

PER CURIAM.—It is very clear that it was not the intention of Mr. Postley to make a chose in action the subject of his gift. His intention was to make a gift in money, not when he executed the check, but at some future day. Hence he did not direct that the check be delivered to the appellant, but directed his daughter to lay it in a safe place. She put it under some books on the book case, where it remained until after he died. The time when he intended to give the money had not arrived. It was within his power to control the gift or cancel and destroy the check: Trough's Estate, 25 P. F. Smith, 115. The facts are not sufficient to establish a gift *inter vivos* nor to create a trust which equity will enforce.

Decree affirmed and appeal dismissed at the costs of the appellant.