## APPEAL OF NELLIE J. WALSH.

[ESTATE OF MARGARET TYRRELL.]

FROM THE DECREE OF THE ORPHANS' COURT OF PHILADELPHIA COUNTY.

| 122 | 177 |
| 180 | 92 |
| 122 | 177 |
| 185 | 45 |
| 122 | 177 |
| 202 | ¹ 92 |

Argued January 26, 1888—Decided October 8, 1888.

1. In every valid gift a present title must vest in the donee, irrevocable in the case of a gift inter vivos, revocable only upon the recovery of the donor, in gifts mortis causa.
2. It is true of both classes of gifts that if there remain anything for the donor to do before the title of his donee is complete, the donor may decline further performance and resume his own.
3. A court of equity will not compel an executor or administrator to complete an imperfect gift by the doing of any act which the donor, if living, might have refused to do.
4. (a) The rules of a saving fund society, known to depositors, provided that no transfer or assignment of the book or the money of a depositor could be acknowledged, but the treasurer might, in proper cases, at his discretion allow money to be paid on the depositor's checks.

   (b) A depositor, in expectation of death, handed her deposit book to a friend, saying: "The money there is for my sister in Ireland, but if I don't die I want it back." She died the next day: *Held*, that the transaction did not constitute a valid donatio mortis causa.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 100 January Term 1888, Sup. Ct.; court below, No. 110 January Term 1887, O. C.

On June 26, 1886, Margaret Tyrrell died intestate, unmarried and without issue. Her sole next of kin were a sister, Catharine Tyrrell and a nephew and a niece, Nellie J. and John T. Walsh, children of a deceased sister. Letters of administration were granted to the niece, Nellie J. Walsh. Catharine Tyrrell, the sister, lived in Ireland.

On March 15, 1887, the account of Nellie J. Walsh, the administratrix, called for audit before ASHMAN, J., showed a balance for distribution of $880.72, subject to costs of audit and the collateral inheritance tax. This balance was claimed

on behalf of Catharine Tyrrell, who produced the testimony of one Thomas Doyle, that on the day before her death, the intestate, as she was about to be removed to a hospital, handed to witness her deposit book with the Philadelphia Saving Fund Society, saying: "The money there is for my sister in Ireland, but if I don't die I want it back." The account in this book contained credits to her amounting to $1,045.75, which was her whole estate and embraced the fund accounted for by her administratrix and for distribution. Certain rules of the saving fund were printed in the deposit book and read as follows:

Every person making a deposit for the first time is to sign a book containing these rules and regulations, which he thereby signifies his assent to, and his willingness to be bound by; and by receiving the book with these rules and regulations printed thereon, he is informed of the same; and any alteration made in these regulations, and any new regulations made by the managers, shall be equally binding on all depositors as those by them subscribed, after the same shall have been duly made known.

No check or order for the payment of money will be accepted in advance; and no transfer or assignment of the book, or of the money belonging to a depositor, can be acknowledged; but the treasurer may, in proper cases, at his discretion allow money to be paid on checks of the depositor, as in other banking institutions, after due notice as above provided.

In case of the death of a depositor, payment can be made only to his or her executors or administrators producing the book, unless an appointment shall have been made by such depositor in the book of the society, of a person to receive the same, agreeably to the tenth article of the Constitution of this Society.

In case any depositor shall be unable by reason of sickness or other infirmity, or of absence from the city, to attend in person to receive any payment, he or she may receive the same by means of a power of attorney duly executed and proven or acknowledged, or, with the consent of the treasurer, upon a check drawn on the society. Blank powers of attorney and checks for this purpose will be furnished gratis, at the office of the society.

The auditing judge, considering the facts in evidence and citing Snellgrove v. Baily, 3 Atk. 214; Gardner v. Parker, 3 Madd. 184; Blount v. Burrow, 4 Bro. C. C. 72; Duffield v. Elwes, 1 Bligh, N. S., 514; Wells v. Tucker, 3 Binn. 366; Brown v. Brown, 18 Conn. 410 (46 Amer. D. 328); Camp's App., 36 Conn. 88 (4 Amer. R. 39); Tillinghast v. Wheaton, 8 R. I. 536 (94 Amer. D. 126); Drury v. Smith, 1 P. Wms. 404; held that the modern principle might be thus stated: A

Opinion of Court below.

gift of a bond or mortgage or other security for money, accompanied by delivery of the instrument, is an equitable assignment; and the legal representatives of the donor, in whom the legal title remains, become trustees for the donee and their names may be used by him to enforce payment. The balance was then awarded to Catharine Tyrrell, the claimant.

To this decree Nellie J. Walsh excepted that the court erred:

1. In holding that the evidence in the case was sufficient to prove a delivery of the donatio mortis causa.

2. In holding that the delivery of the deposit book, with the language used by the decedent, constituted a valid donatio mortis causa.

After argument of the foregoing exceptions, the following opinion was filed, PENROSE, J.:

However contrary to the policy of the law as evinced by the statute of frauds and statutes relating to the execution and proof of wills, nuncupative and written, gifts mortis causa are too firmly established as a method of transferring personalty to be abolished or restricted by anything short of legislative enactment. Though essentially testamentary technically they take effect, or more properly speaking are inchoate, in the lifetime of the donor, and hence may be proved by parol and by the testimony of a single witness: Wells v. Tucker, 3 Binn. 366; Bates v. Kempton, 7 Gray 382. As long ago as 1752 Lord Hardwicke, in Ward v. Turner, 2 Ves. Sr. 431, spoke in the strongest terms of their evils; and in Duffield v. Elwes, 1 Bligh, N. S., 536, Lord Eldon expressed the opinion that they should "be struck out of our law altogether," a sentiment which has been echoed by many eminent judges, in this country as well as in England: Wells v. Tucker, supra; Headley v. Kirby, 18 Pa. 328; Michener v. Dale, 23 Pa. 59; but as these utterances have been without effect upon the law-making power, it must be assumed that they do not accord with the views of the general public and that the suggested change is not desired.

It is perfectly well settled that choses in action, or at least such as import a liability of a third person, are the subjects of a valid donatio mortis causa; the note or obligation of the donor himself is not, but this is because the gift of his own note being of a promise only and not of the thing promised, the

requirement of an actual delivery is wanting : Harris' v. Clark, 3 N. Y. 93.

The requisites of a gift mortis causa are, that it be made in view of impending death; that by express provision or necessary implication, it is to become inoperative if the anticipated death does not take place or if the donee should die previously; and that the intention of the donor to complete the gift be shown by actual delivery of its subject and the surrender of all dominion over it. It is not however essential, as it is in gifts inter vivos (as distinguished from declarations of trust), that the legal title of the donor should be completely divested. "No court of equity," said Lord Eldon, in Duffield v. Elwes, supra, " will compel the completion of gifts inter vivos, and . . . . . the donor is considered as a party who may refuse to complete the intent he has expressed; but I think . . . . . nothing can be more clear than that this donatio mortis causa must be a gift made by the donor in contemplation of the approach of death; that the title is not complete till he is actually dead, and that the question, therefore, never can be what the donor can be compelled to do, but what the donee in the case of a donatio mortis causa can call upon the representatives, real or personal, of that donor to do; the question is this, whether the act of the donor being, as far as the act of the donor itself is to be viewed, complete, the persons who represent that donor . . . . . are not bound to complete that which, as far as the act of the donor is concerned in the question, was incomplete; in other words, where it is the gift of a personal chattel . . . . . which is the subject of the donatio mortis causa, whether after the death of the individual who made that gift, the executor is not to be considered a trustee for the donee. . . . . . I apprehend that really the question does not turn at all upon what the donor could do, or what the donor could not do; but if it was a good donatio mortis causa, what the donee of that donor could call upon the representatives of the donor to do after the death of that donor." See also Story's Eq., § 607 c.

The reason for the distinction in this respect between gifts inter vivos and gifts mortis causa is, that in the case of the latter there is no intention, in the first instance, to pass the property absolutely; because, if the donor recover, the prop-

erty is to remain in him, and a complete transfer of the title might therefore be inconsistent with this conditional quality.

In the case now under consideration, the auditing judge has found, upon evidence which cannot be held to be insufficient, the existence of all the facts necessary to establish a valid gift mortis causa; and the only question is whether the subject— moneys of the donor represented by her deposit book in the saving fund, passed by the mere delivery of the book, coupled with language clearly expressing the intention to give, to or in trust for the donee. Though spoken of as being "on deposit," moneys thus held by the bank or savings institution are in reality loaned; no ownership is retained, and the relation between the bank and the depositor is simply that of debtor and creditor. The entries in the deposit book are the evidence of the debt, and instruments of writing for the payment of money, precisely in the same sense as in the case of a bond or note. That a valid donatio mortis causa may be made of a bond, a mortgage, or a note, payable to bearer, is conceded, and the same must therefore be conceded as to an ordinary deposit book; but it is contended that the principle does not apply, where, as in the present case, by the terms of the deposit a transfer on the books of the institution was required in order to vest the title in the donee. In general, compliance with rules of this character is necessary only for the purpose of establishing the relation between the corporation and the assignee, and want of compliance does not affect the validity of the transaction as between the original parties or persons claiming as volunteers under them: Tidewater Pipe Co. v. Kitchenman, 108 Pa. 630; United States v. Vaughan, 3 Binn. 394, and a gift mortis causa, in view of its conditional character, would seem to be one to which this doctrine would be especially applicable. The delivery of a deposit book with the express intention of passing an ownership which is not to take effect indefeasibly until the death of the donor, manifests the purpose of the latter unequivocally and in the only manner consistent with the nature of the gift; and against such manifestation his personal representatives, where the estate is free from debt, ought not to be permitted to set up as a reason for defeating the gift, a regulation of the bank which does not concern them in any manner. The principle governing the case

is settled, however, by the decisions with regard to gifts mortis causa of unindorsed notes drawn to the order of the donor, the validity of which, though the law was at one time supposed to be to the contrary, is now well settled. The point was first decided in Rankin v. Wegulin, 27 Beav. 309, which was followed in England, in 1859, by Veal v. Veal, 27 Beav. 303; in 1880 by Austin v. Mead, L. R. 15 Ch. Div. 651, and in 1884 by Clement v. Cheesman, L. R. 27 Ch. Div. 631; and in this country by numerous cases: Grover v. Grover, 24 Pick. 261; Bates v. Kempton, 7 Gray 382.

Irrespective, therefore, of express decisions upon the point, and notwithstanding the very able argument of counsel for the exceptants, we should be forced to the conclusion that the gift in this case was valid, in spite of the regulation of the saving fund with regard to the steps required to perfect the legal title of transferees; but the precise question seems to have been decided in numerous cases: Curtis v. The Portland Saving Fund, 77 Me. 750; Brown v. Brown, 18 Conn. 410; Pierce v. The Boston Saving Fund, 129 Mass. 425; Hill v. Stevenson, 63 Me. 364; Tillinghast v. Wheaton, 3 R. I. 36. A contrary conclusion was reached by the Irish Court of Chancery in McGonnell v. Murray, Ir. R. 3 Eq. 460, and by the Supreme Court of Kentucky in Ashbrook v. Ryan, 2 Bush. 228; but these cases appear to stand alone and are opposed in principle to Duffield v. Elwes, Veal v. Veal, and to the general current of authority. See note to Story's Eq., § 607 c.

The exceptions are dismissed, but as the gift falls within the express terms of the act of 1826, it is subject to the payment of collateral inheritance tax, which is awarded accordingly.

Thereupon the exceptant took this appeal, assigning the dismissal of the exceptions and the confirmation of the adjudication as error.

*Mr. H. La Barre Jayne* (with him *Mr. Arthur Biddle* and *Mr. George W. Biddle*), for the appellant:

1. Donationes mortis causa are not favored in the law, from the opening they afford to fraud. They were introduced at a time when the subjects of such donations were few and were capable of complete delivery by gift of hand, but they are now

opposed to the whole spirit of our laws, and, in so far as they are admitted, they render inoperative and void the wise provisions of our statute of wills. It should be the policy of the courts to diminish instead of enlarging the class of objects which may be made the subjects of such donations: Duffield v. Elwes, 1 Bligh N. S. 514; Ward v. Turner, 2 Ves. Sr. 431; Wells v. Tucker, 3 Binn. 366; Headley v. Kirby, 18 Pa. 328; Michener v. Dale, 23 Pa. 59. And it is laid down in all the cases that such donations must be established by clear evidence: McGonnell v. Murray, L. R. 3 Ir. Eq. 465; Hatch v. Atkinson, 56 Me. 325 (96 Amer. D. 464). They are distinguishable from nuncupative wills only by the circumstance of delivery: 1 Wms. Executors, 6 Am. ed., 856; Byles on Bills, 6 Am. ed., 279; the evidence, therefore, to sustain the gift should be as strong and convincing in its character as that to sustain such a will.

2. The delivery of the deposit book with the intention to give the deposit represented by the book, is not a sufficient delivery to constitute a donatio mortis causa, because by the rules of the saving fund and the express terms of the deposit, a transfer on the books of the institution is necessary to vest title in the donee. And, if there is any one thing that is well settled, it is that the donor must part, not only part with the possession, but with all dominion over the subject matter, and that not even a promise to give, or the most express words of gift, will suffice, if the subject matter remain in the custody or the control of the donor: Basket v. Hassell, 107 U. S. 602; Scott v. Lauman, 104 Pa. 593. Where certain formalities are required to make the transfer effectual, it is essential to a valid delivery that the prescribed formalities be complied with: Ward v. Turner, 2 Ves. Sr. 431; Beak v. Beak, L. R. 13 Eq. 489; Moore v. Moore, L. R. 18 Eq. 475; Colman v. Sarel, 3 Bro. C. C. 12 (1 Ves. Jr. 50); Millroy v. Lord, 4 DeG. F. & J. 264; Searle v. Law, 15 Sim. 95; Beech v. Keep, 18 Beav. 285; Morawetz, Corporations, § 501. Therefore, in the recent case of McGonnell v. Murray, L. R. 3 Ir. Eq. 469, the Master of the Rolls, reviewing all the English authorities, held that the mere delivery of a deposit book of a savings fund, without complying with the regulations relating to transfers, was insufficient to constitute a donatio mortis causa of the money de-

posited, in entire harmony with doctrine of Lewin on Trusts, 2 Am. ed., 136.

3. The same doctrine has been repeatedly affirmed in Pennsylvania, though the precise point involved in the present case does not seem to have arisen: Pringle v. Pringle, 59 Pa. 287; Bond v. Bunting, 78 Pa. 215; Scott v. Lauman, 104 Pa. 594. In Fross's App., 105 Pa. 267, it was said: "The delivery must be according to the nature of the subject, and the donor must in some form relinquish not only the possession but all dominion over it." It is asserted, however, that this rule has already been disregarded in the case of certain choses in action, such as bonds, unindorsed notes, and policies of insurance. But bonds were held capable of transfer by simple delivery, because delivery was as complete a transfer as the subject was capable of: Wells v. Tucker, 3 Binn. 366; Licey v. Licey, 7 Pa. 251. The same principle applies to unindorsed promissory notes: Story, Prom. Notes, 7th ed., 153. So as to policies of insurance: Amis v. Witt, 33 Beav. 620; Bond v. Bunting, 78 Pa. 210; Malone's Est., 8 W. N. 179; Madeira's App., 17 W. N. 202. The American cases cited by the court below, in which savings fund deposit books have been held capable of assignment by simple delivery, carry no weight here, because in those jurisdictions volunteers are regarded as purchasers for value; for example, Camp's App., 36 Conn. 39 (4 Amer. R. 39); Pierce v. Savings Bank, 129 Mass. 425 (37 Amer. R. 371).

4. The courts were not slow to detect the unsoundness of the distinction that, although an imperfect gift inter vivos will not be enforced against a donor, an imperfect gift mortis causa will be enforced against his representatives, and it has since been generally repudiated. The rule laid down in Basket v. Hassell, 107 U. S. 602, is the true one. Even in England the rule that an imperfect gift mortis causa was to be upheld as a valid declaration of trust prevailed for a short time: Richardson v. Richardson, L. R. 3 Eq. 686; Morgan v. Malleson, L. R. 10 Eq. 474; but those cases have recently been overruled, and the principle of Colman v. Sarel and Millroy v. Lord reaffirmed and applied to gifts mortis causa as well as to gifts inter vivos: Moore v. Moore, L. R. 18 Eq. 475; Richards v. Delbridge, L. R. 18 Eq. 11. In Pennsylvania, as we have seen, the courts have never adopted the principle of Richardson v. Richardson,

and Morgan v. Malleson, but have affirmed in a long line of cases ending with Fross's Appeal, the rule that equity will not aid a volunteer to reap the benefit of an imperfect conveyance.

*Mr. Dwight M. Lowrey* (with him *Mr. Henry W. Hall, Mr. James M. Beck* and *Mr. Wm. F. Harrity*), for the appellee:

All suggestions that donationes mortis causa should be regarded with disfavor by the courts, even if well founded, are irrelevant. These gifts constitute a method of testamentary disposition well established in the law of Pennsylvania.

1. The evidence in this case is clear, precise and positive, comprehending in itself all the necessary elements of a valid donatio mortis causa: (*a*) The subject-matter of the gift is personal property, a chose in action. (*b*) The delivery was complete and unqualified, according to the nature of the thing given. Delivery to an agent is effectual to pass title: Drury v. Smith, 1 P. Wms. 404; Wells v. Tucker, 3 Binn. 366; Michener v. Dale, 23 Pa. 62. (*c*) The donor said, "But, if I don't die, I want it back;" annexing the very condition which in law characterizes a donatio mortis causa. (*d*) The donor was in her last illness and expectation of death, (*e*) which followed. The testimony of a single witness is ample, because of the notorious circumstance of the delivery of possession: Wells v. Tucker, supra; Michener v. Dale, supra; Bates v. Kempton, 7 Gray 382.

2. The later English cases are to the effect that all choses in action, such as non-negotiable notes, bonds, mortgages, policies of insurance, and all other evidences of indebtedness which may be regarded as representing the debt, may be the subject of a donatio mortis causa, and the delivery of the writing by which the debt is evidenced, even without a written assignment or indorsement, constitutes a valid gift: Duffield v. Elwes, 1 Bligh, N. S., 527; Gardner v. Parker, 3 Madd. 184; Hunt v. Beach, 5 Madd. 351; Veal v. Veal, 27 Beav. 303; Rankin v. Weguelin, 27 Beav. 309; Amis v. Witt, 33 Beav. 619. So, the decisions of American courts: Turpin v. Thompson, 2 Metc. (Ky.) 420; Westerlo v. De Witt, 36 N. Y. 345 (93 Amer. D. 517); Bates v. Kempton, 7 Gray 382; Stephenson v. King, 81 Ky. 425 (50 Amer. R. 173); Lee v. Book, 11 Grat. 182; Brown v. Brown, 18 Conn. 410 (46 Amer. D. 328); Basket v.

Hassell, 107 U. S. 602.   And the principle has been expressly approved in Pennsylvania: Gourley v. Linsenbigler, 51 Pa. 349.

3. The savings bank deposit book represents the claim of the depositor.   It is the evidence of the indebtedness of the bank to the depositor, as much as the bond or note of a corporation or individual: Harley v. Caldwell, 2 Miles 334.   But the precise point in the case at bar has been decided.   In Hill v. Stevenson, 63 Me. 367 (18 Amer. R. 231), a delivery to a donee of a savings bank book containing entries of deposits to the credit of the donor, with the intent to give the donee the deposits represented by the book, was held a good delivery to constitute a valid donatio mortis causa.   And so, Pierce v. Boston S. Bank, 129 Mass. 433 ; Tillinghast v. Wheaton, 8. R. I. 537 (5 Amer. R. 621); Penfield v. Thayer, 2 Smith, E. D., 305 ; Camp's App., 36 Conn. 88 (4 Amer. R. 39).

4. But it is urged, that an assignment in writing was not made as required by the rules of the bank, and that as the gift was without valuable consideration, the court could not have compelled the donor, and cannot now compel the administrator to complete the assignment.   The first ground of objection is irrelevant, because the regulations of the saving fund are for its own protection, and, as between the assignor and assignee, title will pass upon sufficient and unequivocal proof of intention, whether the rules have been complied with or not: United States v. Vaughan, 3 Binn. 394 ; Tidewater Pipe Co. v. Kitchenman, 108 Pa. 630.   As to the second, it has been expressly decided, that a court of equity will compel the executor or administrator to allow the use of his name: Duffield v. Elwes, 1 Bligh, N. S., 527 ; Harris v. Clark, 3 N. Y. 93 (51 Amer. D. 352) ; Grover v. Grover, 24 Pick. 261 (35 Amer. D. 319) ; Tillinghast v. Wheaton, 8 R. I. 536 (5 Amer. D. 621) ; Parrish v. Stone, 14 Pick. 198; Penfield v. Thayer, 2 Smith, E. D., 305.

In conclusion it may be said that the question of law involved has been definitely settled in Madeira's App., 17 W. N. 202.

OPINION, MR. JUSTICE WILLIAMS :

A gift is more than a purpose to give, however clear and well settled the purpose may be.   It is a purpose executed.

Opinion of the Court.

It may be defined as the voluntary transfer of a chattel completed by the delivery of possession. It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and therefore irrevocable contract. All gifts are necessarily inter vivos, for a living donor and donee are indispensable to a valid donation; but when the gift is prompted by the belief of the donor that his death is impending, and is made as a provision for the donee, if death ensues, it is distinguished from the ordinary gift inter vivos and called donatio mortis causa. But by whatever name called the elements necessary to a complete gift are not changed. There must be a purpose to give; this purpose must be expressed in words or signs; and it must be executed by the actual delivery of the thing given to the donee or some one for his use. In every valid gift a present title must vest in the donee, irrevocable in the ordinary case of a gift inter vivos, revocable only upon the recovery of the donor in gifts mortis causa: Wells v. Tucker, 3 Binn. 366; Nicholas v. Adams, 2 Wh. 17; Bacon Ab., vol. 6, p. 162. The thing given must be susceptible of delivery. In the case of money on deposit or loaned out, the certificate of deposit or the bill, note or bond may be delivered properly indorsed, and it will confer on the donee an absolute title to the fund represented by it. But if there remains something for the donor to do before the title of his donee is complete, the donor may decline the further performance and resume his own. This is true of both classes of gifts, and there can be no good reason for distinguishing between them in this particular: Scott v. Lauman, 104 Pa. 593. As to gifts inter vivos it was distinctly held in Bond v. Bunting, 78 Pa. 210, that an assignment or some equivalent instrument was necessary in order to pass title to a chose in action. The reason is that a gift is incomplete which does not clothe the donee with the rights and powers of ownership, and these rights and powers do not vest without a complete delivery: Michener v. Dale, 23 Pa. 59; Fross's Appeal, 105 Pa. 258.

In the case of Basket v. Hassell, 107 U. S. 602, a certificate of deposit was indorsed " Pay Martin Basket, no one else, then not till my death," and so indorsed it was delivered to the donee; but it was held that no valid donatio mortis causa was shown because a delivery of the certificate with the indorse-

ment did not clothe the donee with the rights and powers of an owner. The certificate was put into the hands of the donee, but he was unable to make use of it because of the limitation of the assignment. So in Mitchell v. Smith, the indorsement upon the certificate was "Pay the within contents to Simon Smith or his order, at my death," and delivery of the indorsed certificate was made; but the gift was held to be incomplete because no present control over the fund passed to the donee. If the certificate had been payable to bearer mere delivery would have been enough to pass the title; and it has been held that in the case of notes and other instruments payable to order a delivery accompanied by words importing a present absolute gift would invest the donee with the ownership of the fund. The reason for this holding seems to be that the certificate, bill or note is the legal evidence of the deposit or debt, and that when the owner parts with the instrument by gift or sale, he parts at least prima facie with the debt or deposit. The production of the instrument or proof of its destruction or loss is indispensable to a recovery of the demand it represents, and the owner by his gift of the note parts with his own power over the debt of which it is the evidence.

In the case at bar, Margaret Tyrrell was a depositor in the Philadelphia Saving Fund. Her deposits were held by the bank under the rules of the law merchant and the regulations peculiar to this institution. During her last sickness she handed her bank-book to Thomas Doyle, saying, "The money there is for my sister in Ireland, but if I don't die I want it back." Our question is whether this passed the title to the fund in the hands of the bank as a donatio mortis causa. This depends to some extent upon the character of a depositor's bank-book.

Where a deposit is made in bank, the depositor is credited upon the books of the bank with the amount deposited, and a duplicate entry of credit is made upon the bank-book in his hands. He thus has at all times a statement of his credits in his account with the bank. His debits he may keep in any convenient manner, or if the rules of the bank require it, he may present his book with each check that the debits may be entered by the officers of the bank. The book is at most a statement of an account, showing how much has been deposited by the customer to be held by the bank upon the terms

which the law or the agreement between the parties has provided. When withdrawn it is by means of checks, orders, or such other form of voucher as the terms of the deposit or the usages of the institution may provide for. The mere possession of the book by the bank would afford no evidence of the payment of the money to the depositor. An assignment of such a book, like an assignment of a book of original entries, will operate to transfer the entire balance remaining due upon the account, but a delivery of it will no more transfer the fund than will a delivery of a book of original entries transfer the balances due upon the several accounts contained therein. This is substantially decided in the Peoples' Savings Bank v. Cupps, 91 Pa. 315. Mrs. Cupps placed her bank-book in the hands of her son. He presented it at the bank, together with a forged check in his own favor, and the fund was paid to him. Mrs. Cupps brought suit to recover the amount of her deposits, and the bank set up the possession of the book by the son and its production by him, when the check was presented, as a defence. This defence, however, did not avail, and the plaintiff was permitted to recover from the bank.

When Margaret Tyrrell handed her book to Mr. Doyle, saying, " The money there is for my sister," she did not invest her sister, or Doyle as her representative, with any control over the fund. The ownership did not pass out of her. There was no delivery of a check, order, assignment, or other instrument which would have served as a voucher if the money had been paid by the bank, or by means of which the money could have been properly demanded.

As a gift inter vivos it was not good, for the control of the donor over the fund continued. In Duffield v. Elwes, 1 Bligh, N. S., 527, a distinction was taken between gifts inter vivos and those made causa mortis, to which our attention has been drawn. It was there said, " I apprehend that really the question does not turn at all upon what the donor could do, or what the donor could not do, but if it was a good donatio mortis causa, what the donee of that donor could call upon the representatives of the donor to do after the death of that donor." If this is to be understood, as is urged in the argument, that the personal representatives of a decedent may be compelled to complete a gift which was left incomplete by the alleged donor,

we cannot assent to the doctrine ; nor do we quite understand what is meant by the passage from the opinion cited. If the gift was " a good donatio causa mortis," then nothing remained to be done by the donor that was essential to the vesting of title in his donee ; and the converse of the proposition is equally clear, that if anything remained to be done by the donor which was essential to complete his donee's title, it was not a good donatio, but an unexecuted, possibly an abandoned purpose to give. If, therefore, the case presented was that of a good donatio, the only questions that could be raised between the donee and the personal representatives of the donor would be those relating to matters of form, affecting not the title of the donee, but the use of appropriate remedies against third persons for the recovery of the gift. If it was not a good donatio the courts would have no jurisdiction. The estates of those who can no longer speak for themselves stand in much greater need of protection than living property owners, and it is not possible that a chancellor would compel an executor or administrator to complete a gift by the doing of any act which the alleged donor if living might have refused to do, and thereby revoked his purpose to give. In the case of a book of original entries—a bank-book—an executory contract, and the like, where the possession of the document affords no presumption of ownership, something more is necessary than the manual delivery of the book or paper in order to make a valid gift. The title must pass out of the donor in his lifetime or it can never reach the donee.

Judgment reversed.