Teats *v.* Anderson et ux., Appellants.

524

Argued January 5, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Robert Trucksess,* for appellants.

*Francis T. Dennis,* with him *Nelson P. Fegley,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 25, 1948:

Plaintiff filed a bill in equity to set aside a deed to defendants alleging misrepresentation, duress and coercion, and that she was of poor physical condition, mentally unstable and senile and did not have the capacity to understand the nature of a real estate transaction. The court en banc sustained the chancellor's decree invalidating the conveyance. Defendants appealed.

On the evening of October 25, 1945, defendants Curtis T. and Eva K. Anderson, husband and wife, accompanied by their attorney and a notary public visited the home of plaintiff and her husband Ira W. Teats, now deceased. They procured the signature of Mr. and Mrs. Teats on a blank deed conveying to them the latter's dwelling house located on Ridge Pike, Lower Providence Township, Montgomery County, Pennsylvania. Record title to the property was in the name of plaintiff, individually. The deed was subsequently filled in at the office of the attorney and recorded. At the time of the transfer, Mr. Teats was 79 years of age, bedridden and in the extremity of his last illness. Mrs. Teats was 78, feeble, with poor vision, and suffering from progressive senility.

Although no money or other material consideration passed at the time of the conveyance, the answer alleges that plaintiff's husband, out of gratitude for past services rendered to him and his wife and in consideration that defendants "would continue to perform the same services that they had, and do the same things for Mr. and Mrs. Teats as long as he lived and after his death, as long as Mrs. Teats lived" instructed Curtis T. Anderson to obtain a lawyer for him in order to prepare and have executed the transfer of title to the said real estate. The answer also avers that Robert Trucksess, defendants' personal counsel and second cousin, was designated by the deceased to prepare the necessary instruments. The aforementioned conditions regarding the care to be

furnished the Teats were not recited in the deed but were made the subject of a collateral agreement subsequently drawn by Attorney Trucksess. This collateral agreement also conveyed plaintiff's and her deceased husband's personal property to defendants but was never executed by the transferors.

Five days after the conveyance, plaintiff's husband died. Prior to his death, defendants rendered domestic aid and assistance. After his death, they purchased and installed a new electric range, a new automatic hot water heater, and ordered paint and paper for the Teats' home and cleaned it. They also continued to supply Mrs. Teats with all her food.

At the trial, plaintiff vehemently disavowed any intention to transfer her real estate to the Andersons. She testified that Attorney Trucksess held her hand and filled in her signature on some paper. A handwriting expert, Leon Webster Melcher, stated that Mrs. Teats' signature on the deed contained no additional or different characteristics from her six signatures appearing on the Bills in Equity filed in the instant litigation. He said: ". . . there was no assistance rendered in the signing of this deed, to the extent that it would interfere in any way with the free operation of the hand of the writer." With respect to the events immediately preceding plaintiff's execution of the instrument, she testified: "No, no, I wasn't told anything at all about anything—not about anything at all. I didn't ask anything, because I didn't want anything—there wasn't anything to do. Mr. Teats was just listening to them talk. Then, if he had just said, like I would have said to him if I could have gone first which I always wanted to; if anybody would have said anything to me about anything, I would have said, 'let it to him.'" When asked: "Was it your intention, Mrs. Teats, to deed your property to the Andersons?", she replied: "No, no, no. It wasn't my intention of doing anything but trying to take care of him."

The record indicates that plaintiff was erratic and somewhat unstable mentally. Dr. H. C. Podall, who made an examination of plaintiff on November 9, 1946, testified that "she was suffering from senility, and that she is in such weak-minded condition that she could surely be made the victim of designing persons." and that the condition had existed for some years past.

The following Findings of Fact, inter alia, were made by the Chancellor: 18. "Laura J. Teats when she signed the deed on October 25, 1945, was mentally confused and emotionally upset. She did not understand the nature and import of her act, and did not intend to convey her interest in the real estate in question, to the defendants." 19. "The plaintiff is senile, and was not capable of understanding the nature and effect of the deed she signed in blank." In his Adjudication, he stated: "She did not understand the nature and import of her act, and her signature obtained under such circumstances, was legal fraud." When the findings of fact of a Chancellor are supported by legally sufficient proof and are approved by the court en banc, they are binding on this court. Unless arbitrary and capricious, they have the force and validity of a jury's verdict. *McCown et al. v. Fraser,* 327 Pa. 561, 192 A. 674.

This is an action instituted solely by the wife to rescind a written instrument executed by her, transferring a gift inter vivos. An essential requisite of a gift inter vivos is that "a clear and unmistakable intention on the part of the donor to make a gift of his property" must exist. *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1; *Appeal of Waynesburg College,* 111 Pa. 130, 3 A. 19; *Walsh's Appeal,* 122 Pa. 177, 15 A. 470; *Chapple's Estate,* 332 Pa. 168, 2 A. 2d 719. Was the conveyance to defendants the free and intelligent act of plaintiff, performed with a thorough understanding of the transaction and of its consequences? Chief Justice KEPHART, speaking for this court in *Weber v. Kline,* 293 Pa. 85, 141 A. 721, said: "Generally speaking, the burden of showing both

incapacity and undue influence rests on those asserting the facts. But this rule does not apply where the relation of the parties to each other, or some vicious element in connection with the transaction, is such that the law compels the recipient of the bequest or gift to show that it was the free, voluntary and intelligent act of the person giving it. Though there may be capacity to give, the law, nevertheless, casts this burden on the recipient. The factors which bring this rule into action are fraud, confidential relation, weakness of mind not otherwise incapable, and gross deception. When these appear in the course of an investigation, as to the validity of gifts, the burden of proof will immediately shift." (Quoted with approval by this court in *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1).

All the attendant circumstances cast strong suspicion on this transaction. Defendants called at plaintiff's home at night, with an attorney, a notary public, and a blank deed. No other witnesses were present. Plaintiff's husband was in the extremity of his illness and plaintiff was in an emotionally and mentally upset condition. The finding is justified that plaintiff did not comprehend the legal import of what she did. She was suddenly persuaded to do an act without being given an opportunity to "think it over". Plaintiff for a number of years had not even written her name and all her business affairs had been transacted by her husband. On the witness stand, she exhibited an incoherence of thought and expression and revealed a mind susceptible to influences. It is apparent that her mind was dominated by those directing her pen. Those who claimed to be the recipients of her voluntary bounty failed to meet the burden of proof cast upon them by the confidential relationship which had existed between them for some time. ". . . undue influence which will avoid a deed is such influence as is obtained by excessive importunity, superiority of will or mind, or by any other means constraining the grantor to do what he is unable

to refuse. Whether such improper influence was exercised must usually be inferred from the facts and circumstances of the particular case, such as the situation of the grantor and his relation to others, his condition of health and its effect upon body and mind, his dependence upon, and subjection to, the persons claimed to have influenced him and their opportunity to wield such influence. . . . It is not the fact of the practice of such importunity that renders the deed voidable, but the inability of the grantor to guard himself against imposition or to resist such importunity": 16 Am. Jur. 460-61, section 38.

Inadequacy or want of consideration although generally insufficient of themselves to invalidate a deed, will be credited with much respect by a court of equity where slight circumstances of fraud, oppression, or duress exist in order to invalidate a conveyance. Plaintiff's house is appraised at $7,000. The amount of money expended by defendants in plaintiff's behalf was about seven percent of that sum. "Inadequacy of consideration tends to show fraud, where other circumstances point to misrepresentation, imposition, undue influence, oppression, abuse of confidential relationship, or intoxication of the grantor": 16 Am. Jur. 456, section 33.

Defendants' contention that "the court below could only adjudicate the dower interest of the plaintiff in the property and not declare the deed null and void as to Ira W. Teats" is rejected. The property was held by Laura Teats and her husband as tenants by the entireties. Upon his death she became the sole owner of the property.

The court below properly held that the plaintiff must pay the defendants the sum of $453.94 and any additional sums expended by the defendants for and in behalf of the plaintiff from November 12, 1946, to the date of the decree as a condition precedent to having the deed of October 25, 1945, judicially declared null and void.

Robert Trucksess, the attorney who represented the defendants in the trial court and in this Court, was also

the chief witness for them. It is manifestly improper for a lawyer to act in the one case in the dual rôle of *advocate* and *material witness*, except as to a formal matter such as the attestation or custody of an instrument and except when he may be called for cross-examination by opposing counsel.

In *Smith, to use, v. Smith*, 294 Pa. 347, 144 A. 290, Chief Justice SCHAEFFER speaking for this Court said: "One feature of it [the record] is noteworthy; counsel for appellant who argued the case before us, was alternately advocate and witness at the trial. It would have been better both as a matter of professional good taste and for orderly presentation of his client's defense if, when he found it necessary to assume the character of witness, he had ceased to act in that of counsel." We reiterated this in *Otto Will*, 349 Pa. 205, 36 A. 2d 797.

The decree is affirmed at appellants' cost.