### Blecher Estate.

Argued January 3, 1955. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*E. Eugene Eves*, with him *Hervey B. Smith* and *Smith & Eves*, for appellants.

*R. S. Hemingway*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 14, 1955:

The appeal is from a decree of the Orphans' Court of Montour County which sustains the validity of an alleged common law marriage.

Oliver A. Blecher, the decedent, and Minnie A. Blecher, alleged surviving spouse and appellee, were married in a religious ceremonial service on March 31, 1927. Both had been married before. Each had children by their respective spouses. After marriage they

cohabitated as man and wife until just previous to 1938, when they separated. Appellee went to live with a daughter who resided a number of miles distant from appellee's home. The parties were divorced on April 29, 1938. No children were born of this marriage, or of the later alleged common law marriage. The parties did not encounter each other from the date of the divorce in April, 1938, until they met at a picnic in July, 1938. Appellee testified that decedent invited her to inspect his new automobile and to take a ride. She accepted the invitation. During the ride, appellee testified, decedent stated that he was sorry that he had ever started the divorce and said *"You are my wife; I am your husband and we are going to live together the same as we did before"*. She testified that she said in reply: *"You are my husband and I am your wife"*.

From July, 1938, decedent called on appellee "about every Saturday afternoon" and remained until Sunday afternoon. In November, 1938, decedent started to build a new home which was completed in November, 1939. Appellee testified that when the house was finished decedent said to her: "You are my wife and I am your husband, and we will live as man and wife" and that appellee replied: "You are my husband and I am your wife". Following this conversation appellee moved all her household furniture into the new home. Thereafter the parties lived together as husband and wife from November, 1939, until decedent's death in June of 1951. There was considerable evidence of cohabitation and reputation. Judge KREISHER, an able and experienced judge, reviewed the testimony in a thorough and analytical opinion of forty printed pages. He accepted as credible appellee's testimony.

The judge found that decedent and appellee, following a religious marriage ceremony, lived together as husband and wife from March, 1927, until sometime in

1937, a period of about eleven years. They then separated and were divorced. From July, 1938, until June, 1951, when decedent died, they cohabitated as man and wife, or for a period of thirteen years following the alleged common law marriage. The findings of fact are based chiefly on the Judge's acceptance, as credible, of the testimony of appellee that *per verba de praesenti* the parties entered into a marriage contract. There was ample evidence of cohabitation and reputation following the marriage.

Appellants, children of decedent's prior marriage, contend that the findings of fact are not sufficiently supported because (a) of admission by appellee that she and decedent *intended* to be married but never did (b) during the period of the alleged common law marriage appellee, as widow of her deceased first husband, and in the name of Dewan, had executed deeds for interest in real estate which she had inherited from such former husband and that local tax assessments were in her name as Dewan (c) appellee was unfamiliar with principles of common law marriage until after decedent's death, and her testimony of the words of the alleged contract of marriage were suspiciously similar to the latest decisions of this Court relating to common law marriage.

The learned Judge carefully considered all appellants' contentions. He found that appellee's statements relative to intention to marry related solely to a *ceremonial* marriage; that appellee executed the deed or deeds to interest in real estate, inherited from her former deceased husband, in her previous married name, Dewan, because she had been so instructed by her counsel; and the intimation that appellee's counsel engendered appellee's claim of a common law marriage with a suspicious use of language similar to that contained in appellate court decisions was unwar-

ranted. The learned hearing Judge properly ignored such considerations. Conjecture and suspicion never take the place of testimony: *Rosenthal's Estate,* 339 Pa. 488, 496, 15 A. 2d 370.

Marriage is in law a civil contract and does not require any particular form of solemnization before officers of church or state. It must, however, be evidenced by words in the present tense, uttered with a view and for the purpose of establishing the relation of husband and wife: *Commonwealth v. Stump,* 53 Pa. 132; *McGrath's Estate,* 319 Pa. 309, 179 A. 599; *Rosenberger Estate,* 362 Pa. 153, 65 A. 2d 377; *Murdock's Estate,* 92 Pa. Superior Ct. 275; *Wydra v. Philadelphia & Reading Coal & Iron Company,* 153 Pa. Superior Ct. 529, 34 A. 2d 326; *Ksionska v. The Philadelphia & Reading Coal & Iron Company,* 169 Pa. Superior Ct. 439, 82 A. 2d 505. The Marriage Law of August 22, 1953, P. L. 1344, sec. 23, 48 PS §§1-23, although enacted after the present case, provides that there is to be no change in the existing law with regard to common law marriage. In *Stauffer Estate,* 372 Pa. 537, 541, 94 A. 2d 726, this Court reviewed the field of common law marriages. In that case we quoted with approval what President Judge KELLER said in *Baker v. Mitchell,* 143 Pa. Superior Ct. 50, 17 A. 2d 738: " 'The law of Pennsylvania *recognizes* common law marriages. But they are a fruitful source of perjury and fraud, and, in consequence, they are to be *tolerated, not encouraged;* the professed contract should be examined with great scrutiny, and it should plainly appear that there was an actual agreement entered into, then and there, to form the legal relation of husband and wife: Stevenson's Est., [272 Pa. 291], pp. 296 and 301.' " Since the proof of the marriage rested solely upon the testimony of appellee, the learned hearing Judge considered such testimony with great care in connection

with the supporting evidence. While not approving such marriages, but believing the testimony of appellee and her witnesses, the learned Judge quoted from 1 Freedman, Law of Marriage and Divorce in Pennsylvania 96, sec. 50 (1939) : *"Courts cannot, out of disapproval of such [common law] marriages, legislate against them by a harsh refusal to recognize their existence, . . ."*

The credibility of the witnesses was for the hearing Judge who saw and heard the witnesses. Findings of fact by the hearing Judge will not be disturbed in the absence of manifest error or clear mistake, neither of which is evident in this case. This principle is well settled by a host of cases. See, *inter alia, Borden Trust,* 358 Pa. 138, 56 A. 2d 108; *Teats v. Anderson,* 358 Pa. 523, 58 A. 2d 31; *Harbison Estate,* 365 Pa. 468, 76 A. 2d 187.

We note that the definitive decree appealed from is for the allowance of the family exemption of $750.00 which, on its face, would appear to require its remission to the Superior Court. But by stipulation it is agreed that the sole question is whether or not appellee is the widow of decedent. The record discloses that the balance for distribution shown by the account is $6,689.88. Since the widow's share of the intestate estate is one third plus the family exemption the case properly comes within the jurisdiction of this Court. Appellants should have secured a certificate from the Judge of the amount involved. The foregoing procedural error being harmless, in the circumstances of this case, we have concluded to act upon the merits and not delay the case for the purpose of correction.

We note that two associate judges have joined the law President Judge in the opinion and definitive decree. The exact status of an associate, or lay, judge is considered in 1 Standard Pennsylvania Practice 155,

sec. 186. Where two or more counties constitute a judicial district an associate judge performs administrative duties, etc., but in the purely legal business of the court the control of the law Judge is exclusive. Since the two associate judges, one of whom did not hear the evidence (81a), have joined and not dissented from the law Judge no question can be raised. Apparently, however, their joinder indicates that they concur in the opinion and decree of the hearing Judge.

We note that in the court's decree the costs of the proceedings are directed to be paid as part of the costs of administration. We approve such payment of costs in the court below out of corpus of the estate. However, such decree does not apply to the costs in *this* Court.

The decree is affirmed, at the cost of appellants.