Stein *v.* Fisher et al., Appellants.

Argued March 23, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Abraham J. Levinson,* with him *James Dessen,* for appellants.

*Lawrence M. Aglow,* with him *Samuel C. Nissenbaum,* for appellee.

OPINION BY WOODSIDE, J., June 12, 1962:

This is an action in equity brought by a business broker seeking relief as a creditor under the bulk sales provision of the Uniform Commercial Code. The plain-

tiff seeks to recover a commission for the sale of Callahan's Bar. The case was heard before PETER F. HAGAN, President Judge of the Court of Common Pleas No. 1 of Philadelphia, who on behalf of the court, entered judgment in favor of the plaintiff and against the defendants Fisher and Gold in the sum of $3600 with interest from June 28, 1960. The defendants appealed.

The facts found by the chancellor, and approved by the court below, were substantially as follows: Late in December of 1959, Fisher and Gold, the defendants, informed Stein, the plaintiff that they were interested in selling Callahan's Bar, and they gave the plaintiff a general agency to attempt to effectuate the sale for them. The defendants notified the plaintiff that they wanted to receive $75,000 "net" from the sale, but that they "may come down a little bit". When the plaintiff inquired as to what the defendants meant by "a little bit", he was told to produce a potential buyer and the defendants would then discuss what they meant by that term. Later the defendants indicated a willingness to accept $72,000 net. The defendants also informed the plaintiff that they were interested only in the net amount which they were to receive from the sale, and that, therefore, the amount of the plaintiff's commission could be determined only after the gross sale figure had been ascertained.

The plaintiff, through advertising and personal solicitation, succeeded in procuring two potential buyers, Modell and O'Brien, both of whom the plaintiff introduced to the defendants. For several months negotiations were conducted among the plaintiff, the defendants, the defendants' attorney and Modell and O'Brien. Modell's highest offer to purchase the business was $70,000, all of which was to be paid in cash. The defendants eventually refused this offer as inadequate.

O'Brien, on the other hand, agreed to pay the defendants $72,000, a sum sufficient to meet the demand

of the defendants, but he was unable to raise enough cash to meet the purchase price. He had equity in certain business establishments, and with this collateral, the plaintiff was able to secure for O'Brien a commitment from Time Sales Finance Company for a $60,000 loan. The plaintiff thereupon submitted to the defendants an offer on behalf of O'Brien of $60,000 in cash (to be produced by means of a loan from Time Sales Finance Company), provided that defendants would accept a note from O'Brien for the balance of $12,000. The plaintiff pressed this offer on behalf of O'Brien to the defendants in March, April and May of 1960, but the defendants informed the plaintiff that they were not interested in any sale in which they would be required to accept a note from O'Brien for a portion of the purchase price. The plaintiff communicated this information to O'Brien, and suggested that he might as well forget about trying to buy the defendants' business.

In June of 1960, the defendants informed the plaintiff that they had sold the business, and requested him to help them in the preparation of an inventory in connection with the sale. In assisting the defendants in the preparation of the inventory he discovered that the purchaser was O'Brien. When the plaintiff discovered this fact, he requested that he be paid a commission, but the defendants refused to pay him anything on the ground that the sale had been consummated through Fox, another broker. The defendants admitted that the plaintiff had submitted an offer on behalf of O'Brien under which O'Brien would pay a certain amount in cash, produced by financing, and the defendants would be required to take a note for the balance. They contended, however, that the amount of cash in the offer submitted by the plaintiff on behalf of O'Brien was $50,000 rather than $60,000 as testified to by plaintiff, and that, therefore, the amount of the note which

they would be required to take back from O'Brien would be commensurately larger. The defendants testified that the reason they did not accept the offer that O'Brien had submitted through the plaintiff was that the cash payment was too small, and the amount of the note which the defendants would be required to accept was too large.

The defendants testified that the final transaction with O'Brien was actually consummated through another business broker, Bill Fox, on June 28, 1960. The agreement finally consummated was offered in evidence and disclosed that the price actually received by the defendants was $72,000, of which $57,000 was in cash and $15,000 was in the form of notes executed by O'Brien. The evidence further disclosed that the total amount paid by O'Brien was $75,000, from which it could be inferred that Fox received a commission of $3,000 on the sale.

The factual situation thus presented is that the defendants sold the business to a buyer who had been originally produced to them by the plaintiff and upon terms which the court below found to be "very similar" to the offer originally submitted by the plaintiff on behalf of O'Brien, the eventual buyer. The total amount actually received by the defendants, $72,000, was the same as that originally offered by the plaintiff on behalf of O'Brien. The amount of cash which was accepted by the defendants, to wit, $57,000, was $3,000 less than the amount of cash which the defendants would have received from the offer which the plaintiff had submitted to the defendants on behalf of O'Brien. Even accepting the defendants' evidence, the amount of cash which they received was only $7,000 more than the amount of cash they would have received had they accepted the plaintiff's offer on behalf of O'Brien. The court below accepted the plaintiff's testimony that the offer which he submitted on behalf of O'Brien provided

156

for the payment of $60,000 in cash, rather than $50,000 in cash, as testified to by the defendants.

Thus, the plaintiff, as a general agent for the sale of the defendants' business, after considerable effort, produced a person willing and able to purchase, upon certain specified terms. The defendants, however, notified the plaintiff that the terms were not acceptable and the plaintiff thereupon so informed the potential purchaser. Several months later, the defendants sold the business through another broker to the purchaser produced by the plaintiff upon terms substantially the same as those originally proposed by the plaintiff on behalf of that purchaser. As stated by the court below, "The legal question is whether or not, under these circumstances, plaintiff is entitled to a commission from defendants."

The defendants' position is that the plaintiff is not entitled to any commission because the plaintiff had abandoned the original negotiations with O'Brien. In particular, the defendants rely upon the plaintiff's testimony that he had told O'Brien, with respect to the proposed purchase "you may as well forget it".

The plaintiff is entitled to a commission if the evidence supports a finding that he participated in the transaction as an efficient and procuring cause in the ultimate sale to O'Brien. *Kahn v. Levy*, 391 Pa. 124, 131, 137 A. 2d 291 (1958). It has been said: "If a mere introduction of the property to the notice of the buyer effects the sale, the broker earns his commission. An advertisement or any other service is enough if it be the immediate and efficient cause of the bargain." *Earp v. Cummins*, 54 Pa. 394, 397 (1867).

If, however, the service of the broker fails to accomplish a sale, and several months after the proposed purchaser has decided not to buy, he is induced by others to reconsider and then makes the purchase as the con-

sequence of a secondary or supervening influence the original broker is not entitled to a commission. *Earp v. Cummins,* supra.

The court below found from all the evidence that the plaintiff's services were the efficient cause of the sale of the bar to O'Brien. Under these circumstances he is entitled to recover. *Stevenson v. Nichols,* 362 Pa. 25, 28, 66 A. 2d 235 (1949). A broker may be the procuring cause of a transaction, so as to be entitled to compensation, even though the transaction is closed or consummated by the principal through the medium of another broker. 12 C.J.S. Brokers §92; *Wilson v. Franklin,* 282 Pa. 189, 127 A. 609 (1925).

The appellants argue that the evidence does not support the finding that the plaintiff's services were the efficient cause of the sale. The chancellor's findings, approved by the court en banc, are binding on this Court. Unless arbitrary and capricious they have the force and validity of a jury's verdict. *McCown v. Fraser,* 327 Pa. 561, 566, 192 A. 674 (1937); *Teats v. Anderson,* 358 Pa. 523, 527, 58 A. 2d 31 (1948); *Mann v. Mann,* 387 Pa. 230, 127 A. 2d 666 (1956). In attacking the findings before us, the appellants' counsel views the evidence in the light most favorable to his client. This, of course, we cannot do. The chancellor had the witnesses before him and could pass upon their credibility and draw reasonable inferences from that part of the testimony which he believed. We have examined the evidence and are satisfied that the court below was not arbitrary or capricious in making its findings.

Decree affirmed at cost of appellants.