## Coulter Estate.

Argued January 10, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Garry G. Greenstein,* with him *Marlyn F. Smith,* for appellant.

*Frederick C. N. Littleton,* with him *M. Paul Smith,* and *Grubb, Guest and Littleton,* and *Smith, Cahall and Aker,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 13, 1962:

Under attack on this appeal is the validity of a decree of the Orphans' Court of Montgomery County which found that Robert J. Coulter (Coulter) was an incompetent within the provisions of the Incompetents' Estates Act of 1955[1] and appointed a guardian of his estate.

Coulter, 78 years of age, resided on Bryn Mawr Avenue, Penn Valley, Montgomery County, in a home jointly owned by himself and his wife[2] until on or about May 22, 1955 when he entered a nursing home located in Villanova, Delaware County, Pa. About October 2, 1955 a Mrs. Rose Wood, a nurse at the Villanova nursing home, arranged for Coulter to move to a rest home which she operated in Chester Plaza, Chester, Pa. In August 1960, Mrs. Wood moved her guests, including Coulter, to a new rest home in Claymount, Delaware, approximately one mile from the Pennsylvania border.[3]

On April 17, 1945, Coulter had made a will wherein he named Real Estate Trust Company, now Liberty Real Estate Bank and Trust Company (Bank), and Attorney Grubb, a member of the Philadelphia bar, as executors. On March 14, 1955, Coulter executed a general power of attorney in favor of Attorney Grubb

---

[1] Act of February 28, 1956, P. L. (1955) 1154, §101, as amended July 11, 1957, P. L. 794, §1, 50 PS §3101 et seq.

[2] Mrs. Coulter died February 5, 1961.

[3] See: *Greenberg Estate,* 8 Fiduc. Rep. 129.

and from that time Attorney Grubb paid all Coulter's bills and managed his investments. On April 29, 1956, Coulter executed an agency agreement under which the Bank "was named as agent to manage his securities and investments"; in actuality the Bank functioned more as a custodian rather than as an agent. From March 14, 1955 until March 30, 1961—approximately eight weeks after Mrs. Coulter's death—Attorney Grubb handled all Coulter's affairs. On the latter date Attorney Grubb received a letter from Attorney Greenstein, a member of the bar of Wilmington, Delaware, which enclosed a paper signed by Coulter cancelling Attorney Grubb's power of attorney.

On or about April 6, 1961, Ella J. Gray, *Coulter's sister and closest relative,* together with Helen Weller, one of five first cousins of Coulter, petitioned the Orphans' Court of Montgomery County for the appointment of a guardian for Coulter under the Incompetents' Estates Act, supra.[4] Coulter was personally served with a notice of the filing of the petition and the date of hearing but he did not personally appear at the hearing although he was thereat represented by counsel. After hearing, the Orphans' Court of Montgomery County found that Coulter, because of mental infirmities due to old age, was unable to manage his property[5] and was liable to dissipate it or become the victim of

[4] On April 19, 1961—after service of the Pennsylvania petition —Coulter filed a petition for the appointment of a guardian in the Court of Chancery of New Castle County, Delaware. That petition, which sought the appointment of a Wilmington Trust Company as guardian and averred that Coulter was "of sound mind, but because of advanced age is unable properly to manage and care for his property", is still pending awaiting the outcome of this litigation.

[5] Coulter's estate consists of the following: securities held by the Bank valued as of January 30, 1961 as $428,409.68, several savings accounts totalling over $36,000, U. S. Savings Bonds with a face value of more than $20,000 and real estate in Bryn Mawr, Pa., valued at $27,500.

designing persons,[6] and appointed the Bank as guardian of his estate. From that decree, Coulter has appealed.

Coulter raises various questions upon this appeal: (1) that the Montgomery County court lacked jurisdiction because Coulter was domiciled in Delaware; (2) that the proof of Coulter's incompetency was insufficient; (3) that Attorney Grubb, in his representation of Coulter's sister and first cousin, acted unethically; (4) that the court erred in not permitting cross-examination of Coulter's sister as an adverse witness; (5) that Coulter's non-appearance at the hearing voided the proceedings; (6) that the court abused its discretion in appointing the Bank as guardian in view of Coulter's objection to such guardian; (7) that the court erred in equating Coulter's averment in the Delaware petition that "because of advanced age" he was "unable to properly manage and care for his property" within the requirement of the Pennsylvania statutory definition of incompetency that "because of mental infirmities of old age . . . [he] is unable to manage his property"; (8) that the court erred in relying on certain unsworn testimony.

The court below found that it had jurisdiction to adjudicate Coulter's competency as a domiciliary of the Commonwealth on the basis that Coulter has always maintained his residence in Penn Valley, Pa., had given his Bryn Mawr Avenue residence on his tax returns and that his presence in the Delaware rest home did not establish that he was a domiciliary of Delaware. In Section 301(a) of the Incompetents' Estates Act, supra (50 PS §3301), it is provided, inter alia, that "(a) Resident. The court . . . may find a person *domiciled*

---

[6] An "incompetent" is "a person who, because of *mental infirmities of old age*, mental illness, mental deficiency, drug addiction or inebriety, is unable to manage his property, or is liable to dissipate it or become the victim of designing persons": Incompetents' Estates Act, supra, §102, 50 PS §3102. (Emphasis supplied)

*in the Commonwealth* to be incompetent and appoint a guardian or guardians of his estate". (Emphasis supplied) In *Publicker Estate,* 385 Pa. 403, 405, 406, 123 A. 2d 655, we stated: "The domicile of a person is the place where he has voluntarily fixed his habitation with a present intention to make it either his permanent home or his home for the indefinite future. To effect a change of domicile there must be a concurrence of the following factors: (1) physical presence in the place where domicile is alleged to have been acquired, and (2) an intention to make it his home without any fixed or certain purpose to return to his former place of abode: Dorrance's Estate, 309 Pa. 151, 163, A. 303". While ordinarily the fact of physical presence in a particular place is prima facie evidence of domicile yet where such physical presence is occasioned by necessity, i.e., in a military camp, a hospital, a nursing home, etc., the rule is otherwise. The burden of proving a change of domicile rests upon the party asserting it (*Dorrance's Estate,* supra), particularly under circumstances such as presented in the case at bar. The record fully justified the finding by the court below that Coulter, actually physically present in the Delaware rest home, had not abandoned his former domicile in Pennsylvania and changed his domicile to Delaware. There is nothing on this record to indicate that his physical presence in Delaware is one of choice but rather of the necessity created by his physical condition and advanced years.

Moreover, even though Coulter was not a domiciliary of Pennsylvania, the court below had jurisdiction in this proceeding. Under Section 301(b) of the Incompetents' Estates Act, supra (50 PS §3301), it is provided, inter alia, that "(b) Nonresident. The court may find a person *not domiciled in the Commonwealth,* having property in the Commonwealth, to be incompetent and may appoint a guardian of his estate". (Em-

phasis supplied) It is undisputed that all Coulter's property is located in Pennsylvania; under such circumstances, the court below clearly had jurisdiction to declare Coulter incompetent and appoint a guardian for his estate. See: *Card Appeal,* 177 Pa. Superior Ct. 502, 505, 110 A. 2d 856.

Our examination of this record clearly reveals that, while the evidence presented to the court below was insufficient to justify a finding of incompetency on the basis of mental illness or insanity, yet the evidence was sufficient to justify a finding of incompetency upon the ground that, by reason of Coulter's mental infirmities due to his advanced age, he was unable to manage his own property and liable to become the victim of designing persons. As far back as 1955 when Coulter executed the power of attorney he recognized his own inability to manage his own affairs.[7] As recently as April 19, 1961 in Coulter's petition to the Delaware Court he averred that "because of advanced age [he] is unable to manage and care for his property" and requested the appointment of a guardian. The court below saw and heard the testimony of Dr. Boerner, (psychiatrist who testified for the petition), Dr. White, (an osteopathic doctor), Dr. Harris (an osteopathic doctor and specialist in psychiatry and neurology), the latter two doctors testifying against the petition, and the court chose to credit the testimony of Dr. Boerner and his opinion that Coulter was unable to make intelligent decisions concerning business and financial matters and might become the victim of designing persons. There was evidence upon which the court below based its finding of incompetency and our review of the record indicates the adequacy of such evi-

---

[7] On February 26, 1961, Coulter's sister in a letter to the Woods, owners of the rest home, stated that Coulter in her presence stated "that he wanted to give the attorney the power of attorney, as he could not at that time take care of things ......"

dence. In this connection, Woods' letter to Coulter's sister in which they indicate how Mrs. Woods used her influence over Coulter in connection with the disposition of certain property left by Mrs. Coulter is highly significant!

Complaint is made of the conduct of Attorney Grubb upon the ground that, having represented Coulter as his attorney in fact and attorney for many years, Attorney Grubb or his firm in representing Coulter's sister and first cousin in this proceeding created a conflict of interests which is so contrary to justice that the decree of the court below must be reversed. Under the situation in the case at bar, we see no merit in this complaint. However, it does appear that Attorney Grubb, without objection, testified as a witness and that the firm of which he is a member acted as trial counsel. In *Otto Will,* 349 Pa. 205, 211, 36 A. 2d 797, we stated: "For an attorney to appear as both a witness and an advocate in the trial of a case . . . is a practice which we condemn. An attorney who does this, except in those rare instances where an adverse party puts him on the stand as a witness, commits a breach of good professional taste . . . ." See also: *Teats v. Anderson,* 358 Pa. 523, 530, 58 A. 2d 31; *Tonuci v. Beegal,* 188 Pa. Superior Ct. 66, 71, 72, 145 A. 2d 885; Rule 222, Pa. R. C. P. Under the present circumstances, with the knowledge that Attorney Grubb would be called as a witness, it would have constituted much better professional taste if counsel other than his own firm had acted for petitioners. Such representation, however, does not justify a vacation of the instant decree.

Under the Act of May 23, 1887, P. L. 158, §7, as amended, 28 PS §381 it is provided: "In any civil proceeding . . . a party to the record . . . may be compelled by the adverse party to testify as if under cross-examination . . . ." Ella J. Gray, one of petitioners and thus an "adverse party", was called by her own counsel on

direct examination. Upon completion of the direct examination, Mrs. Gray was then cross-examined by Coulter's counsel. Upon completion of this cross-examination, it appearing that Mrs. Gray was required immediately to return to her home in Florida, Coulter's counsel asked leave of court to call Mrs. Gray *as his own witness*[8] which the court permitted. Then Coulter's counsel proceeded to cross-examine, not directly examine, Mrs. Gray and, upon objection, the court below ruled that Coulter's counsel could not cross-examine Mrs. Gray since she then was his witness. The court acted with complete propriety under the circumstances in refusing to permit a cross-examination of this witness after Coulter's counsel had called her not as an adverse party but as his own witness.

Coulter was served personally with notice of the petition and the date of hearing at the rest home in Delaware. Petitioners' counsel at the hearing, in answer to an inquiry of the court as to why Coulter was not present at the hearing, stated that, when he served him with the petition, Coulter stated that he would come to the hearing but that, when he asked him the day before the hearing, Coulter said he would not come. In the first place, appellant complains that this statement of counsel was unsworn testimony which the court should not have considered. Coulter, apparently, is unmindful of the fact that this was a statement called forth by the court and made to the court by an officer

---

[8] The record shows the following [Coulter's counsel]: "Your Honor, I still am not clear as to whether I will be allowed to examine her on direct examination about this letter, later on. The Court: If you are going to call her as your witness, then, it is your problem. [Coulter's counsel]: Yes. *I wish to call her as my own witness.* If you will allow me, *I will call her now as my own witness,* and then she will be free to leave. The Court: All right. Let the record show that at this time the interrogation of this witness by [Coulter's counsel] is part of his case in chief; and that cross-examination thereof will be permitted". (Emphasis supplied)

of the court. Under such circumstances, the court had every reason to rely on the statement made, especially in view of the statement at that time to the court by Coulter's counsel: "I am unable to say why he won't be here, except the statement he doesn't want to come". Coulter's complaint in this respect is entirely without merit. In the second place, Coulter urges that the court erred in permitting the hearing to be held in the absence of the alleged incompetent. The court below properly disposed of this contention in the following manner: "Mr. Coulter did not attend the hearing in person. Section 301(a) of the Incompetents' Estates Act provides, inter alia, as follows: 'The alleged incompetent shall be present at the hearing unless (1) the court is satisfied, upon the presentation of positive testimony, that because of his physical or mental condition his welfare would not be promoted by his presence; or (2) it is impossible for him to be present because of his absence from the Commonwealth.'

"The respondent argues that although the evidence shows that Mr. Coulter was absent from the Commonwealth, it does not show that it was impossible for him to be present for that reason. The respondent argues that rather than impossibility as the reason for the absence of Mr. Coulter, the evidence affirmatively showed that he could have been present, but did not choose to come. The record shows that Mr. Coulter was served with a citation to appear for the hearing and that he stated at the time of service that he would be present in this court for the hearing. He did not appear in person but was represented by counsel.

"This court does have a duty to order the respondent to be produced in court unless there is clear, positive testimony that he cannot be brought into court with safety to himself. Ryman's Case, 139 Pa. Superior Ct. 212; Youngs Est., 9 Fiduc. Rep. 603. But in the present case the combination of the absence of the alleged

incompetent from the Commonwealth and his refusal to attend have made it impossible for him to be present. Section 301 (a) (2) is directly applicable to the circumstances of this case. All available legal process has been utilized in seeking to have Mr. Coulter attend the hearing. However, the refusal of Mr. Coulter to cooperate by attending the hearing voluntarily has made it 'impossible for him to be present because of his absence from the Commonwealth.' It is legally impossible for this court to compel the attendance of Mr. Coulter so long as he remains outside the Commonwealth. Therefore, the court does have jurisdiction."

Lastly, it is urged that the court erred in appointing the Bank as guardian inasmuch as such appointment was not acceptable to Coulter. There is not a scintilla of evidence upon this record that the Bank is not fully and completely qualified to act as guardian; on the contrary, the record indicates that the Bank has had custody of Coulter's securities, without objection, for almost five years. The only objection seems to stem from the fact that Attorney Grubb is one of the Bank's counsel. That objection standing alone does not disqualify the Bank. The selection of a guardian for an incompetent lies within the sound discretion of the court to which the application for such appointment has been made and an appellate court will not reverse unless it is shown that the appointing court abused its discretion: *Arthur's Case,* 136 Pa. Superior Ct. 261, 264, 265, 7 A. 2d 55; *Voshake's Estate,* 125 Pa. Superior Ct. 98, 101, 102, 189 A. 753. The instant record reveals no such abuse of discretion.

Recently in *Myers Estate,* 395 Pa. 459, 462, 150 A. 2d 525, we stated: "In reviewing the propriety of the action of the court below, we must bear in mind that this statute . . . which empowers a court to declare an individual mentally incompetent and to place such individual's business affairs in the hands of another for

management and care is 'a dangerous statute easily capable of abuse . . . .': [citing cases]. Mental capacity and competency are to be presumed and before any person shall be deprived of the right to handle his or her . . . affairs there must be *clear* and *convincing* proof of mental incompetency and such proof must be *preponderating*: [citing cases]." It is with this standard in mind that we have carefully examined the instant record. In a sense this case is unique. Both parties agree on the need for appointment of a guardian. Where the disagreement arises is whether the guardian is to be appointed under the laws of Pennsylvania or Delaware. Actually, the practical difference between the parties appears to be which counsel is going to act as counsel for the guardian.

The court below had the benefit of hearing and observing all the witnesses and we should not substitute our judgment for that of the court below; even though we, had we been sitting in judgment below, might have reached a contrary result, yet if the evidence is sufficient in quality and quantity to sustain a finding of mental infirmities due to old age such a finding should be sustained. Our review of the record satisfies us that such a finding was properly made by the court below.

Decree affirmed. Costs on appellant.