431 A.2d 984

COMMONWEALTH of Pennsylvania

v.

Theodore FLOYD, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 30, 1981.

Decided July 8, 1981.

Peter C. Bowers, Bala Cynwyd, Philadelphia County (Court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Philadelphia, Philadelphia County, for appellee.

540

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

OPINION

NIX, Justice.

Appellant Theodore Floyd was arrested and charged with the killing of 18-year-old Michael Reed on November 24, 1977. Michael Reed and his companion, Calvin Hill, were visiting a friend in the 1600 block of South Ringgold Street in the City of Philadelphia. Michael and Calvin left their friend's home at about 3:30 in the afternoon and proceeded to walk south on Ringgold Street. After walking a short distance Michael yelled, "Run." Calvin in response turned and saw appellant and a Michael Williams, both of whom he knew, approaching them. Appellant pointed a gun at Michael and pulled the trigger, but the gun misfired. Appellant and Williams continued to pursue the decedent and Calvin Hill. During that chase, appellant fatally shot Michael Reed in the back. When Michael fell to the ground, appellant repeatedly kicked him as Williams stood nearby. Appellant and Williams then fled from the scene. These events were also witnessed by a Mr. Keith Shepherd.

After jury trial, appellant was convicted of murder in the first degree and conspiracy. Post-trial motions were filed, argued, and dismissed. Appellant was sentenced to consecutive prison terms of life imprisonment on the murder charge and to one (1) to ten (10) years imprisonment for the conspiracy offense. This direct appeal followed.

The first assignment of error is that prior to trial the court below improperly raised defendant's bail from $10,000 to $25,000. It is asserted the action of the court in increasing the bail was improper and that appellant is entitled to a new trial.

Even if we were to assume that the bail was improperly raised, although our review of the record suggests otherwise, we have been presented with no authority, nor do we know of any, that would indicate the awarding of

a retrial as the appropriate remedy. Although appellant notes that bail affords an accused a greater opportunity to participate in the preparation of his defense, he has not been able to specifically state that his defense in this instance was in any way prejudiced or that on retrial he can produce evidence that he was prevented from obtaining because of his alleged improper pre-trial incarceration due to the increase in bail.[1] In substance, the argument presented is that as a prophylactic measure we should award him a retrial to punish the court for what he claims was an improper detention. Prophylactic rules are employed only when there is an indication of a widespread practice which cannot be otherwise eradicated. *Commonwealth v. Kulp*, 476 Pa. 358, 362–63, 382 A.2d 1209, 1211–12 (1978); *Commonwealth v. Williams*, 454 Pa. 368, 372, 312 A.2d 597, 599–600 (1973); *see generally, Mapp v. Ohio*, 367 U.S. 643, 651–52, 81 S.Ct. 1684, 1689–90, 6 L.Ed.2d 1081 (1961). Here there is no basis for considering the instant complaint as falling within such a category.

■ Prior to trial appellant filed a motion to suppress any identification testimony by Mr. Keith Shepherd at trial. The denial of this motion is now assigned as error. It is argued that Mr. Shepherd's identification testimony should have been suppressed because of the obvious suggestiveness of the confrontation which occurred at the preliminary hearing. The question of courtroom confrontations was recently fully considered by this Court in *Commonwealth v. Sexton*, 485 Pa. 17, 21–22, 400 A.2d 1289, 1291 (1979):

> There are many cases in the federal courts, where the initial one-on-one confrontation between an accused and an identifying witness occurs at an in-court preliminary hearing, which have held the identification procedures not to be unduly suggestive and the identification evidence derived therefrom to be reliable. *See e. g., Clemons v. United States*, 133 U.S.App.D.C. 27, 408 F.2d 1230, 1240

---

1. It is to be noted that the increase in bail occurred less than a month before the commencement of trial. Thus, appellant was on bail for a substantial period of time between his arrest and trial.

(1968), *cert. denied,* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); *United States v. Davis,* 407 F.2d 846, 847 (4th Cir. 1969); *United States v. Freie,* 545 F.2d 1217, 1224 (9th Cir. 1976); *Haberstroh v. Montanye,* 362 F.Supp. 838 (W.D.N.Y.1973), *affirmed* 493 F.2d 483 (2d Cir. 1974).

The suggestive quality arising from a courtroom confrontation is created by the fact that the accused is clearly designated by his role in the proceeding as the suspected perpetrator prior to the identification. The type of inherent suggestiveness present in all one-to-one confrontations is present, and to some extent magnified, where the identification is made in open court. *Commonwealth v. Fant,* 480 Pa. 586, 591, 391 A.2d 1040, 1043 (1978), *Commonwealth v. Fowler,* 466 Pa. 198, 203–04, 352 A.2d 17, 19–20 (1976). *See also United States ex rel. Riffert v. Rundle,* 464 F.2d 1348, 1350 (3d Cir. 1972), *cert. denied sub. nom. Riffert v. Johnson* , 415 U.S. 927, 94 S.Ct. 1434, 39 L.Ed.2d 484 (1974). Nevertheless, the key in determining the admissibility of such evidence is not simply the suggestiveness of the circumstances surrounding the identification but rather the likelihood of misidentification. *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972):

It is the likelihood of misidentification which violates a defendant's right to due process, and it is this which was the basis of the exclusion of evidence in *Foster* [*Foster v. California,* 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402]. Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous. But as *Stovall* [*Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199] makes clear, the admission of evidence of a showup without more does not violate due process.

*Id.* at 198, 93 S.Ct. at 381–382.

To assess the validity of the instant claim, it must be stressed that the suggestiveness of a courtroom identification is only one factor to be considered in determining the

reliability of the identification evidence offered by Mr. Shepherd at trial. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). We are required to look at the totality of the circumstances to determine whether the influences for a misidentification were so great as to render Mr. Shepherd's in-court identification offensive to the fairness mandated by due process. *Commonwealth v. Ransome*, 485 Pa. 490, 496, 402 A.2d 1379, 1382 (1979); *Commonwealth v. Sexton, supra*, 485 Pa. at 22, 400 A.2d at 1292; *Commonwealth v. Fowler*, 466 Pa. 198, 203, 352 A.2d 17, 19 (1976); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968); *Stoval v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967).

It is to be noted that this witness did not at any time unequivocally identify appellant as one of the two perpetrators of the killing. The full extent of his testimony was that appellant looked like one of the men. No reference was made during the examination of the witness in chief at trial relating to the preliminary hearing identification. Thus the relevance of that proceeding is limited to any taint it may have created upon the trial testimony. We therefore are required to determine from this record whether the circumstances surrounding the preliminary hearing identification was so suggestive as to create "a very substantial likelihood of irreparable misidentification." *Simmons v. U.S.*, 309 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

A review of the pertinent facts clearly reveal this witness's resistance to suggestive influences. Shortly after the incident, Mr. Shepherd supplied the police with a detailed description of the two men involved.[2] When asked by the police shortly after the event whether he would recognize the person who allegedly accompanied appellant, he stated that he would. As to appellant, he stated that he "might" remember the shooter. When the witness was

2. The description given of the individual alleged to have been appellant has not been at any point challenged as being inconsistent with the appearance of appellant. This is entirely consistent with his trial testimony that appellant looked like one of the two assailants.

called to participate in the preliminary hearing and requested to identify appellant, he was not able to positively identify appellant but merely stated that he resembled the shooter.

Several months after the preliminary hearing during an investigation being conducted by defense counsel, appellant was introduced to Mr. Shepherd by counsel and identified by counsel as one of the two individuals charged with this offense. At trial Mr. Shepherd's testimony as to the identification of appellant remained unaltered from his testimony at the preliminary hearing. The witness at no time positively identified appellant as the other participant. The witness maintained the posture even though he was aware Calvin Hill had positively identified Theodore Floyd as the shooter. In view of the circumstances we are satisfied that the extra-judicial identification procedure was properly confined to the weight of the identification testimony of this witness at trial and should not have affected its competency.

In reaching this conclusion, we are not only impressed by the witness's resistance to any suggestion that may have been involved in the procedure at the preliminary hearing, but we also recognize that the impromptu confrontation occasioned by the defense, although well intentioned, in all likelihood vitiated any prejudice that may have been present as a result of the preliminary hearing. Reviewing the totality of the circumstances there is nothing to indicate in this record either that the witness was mistaken in his testimony that appellant looked liked one of the two men he had seen or that this conclusion was compelled by the circumstances of the preliminary hearing. Moreover, appellant had the opportunity to present to the jury the witness's reaction to the confrontation that occurred during the defense's investigation. Considering all of these factors we are satisfied that the demands of a fair trial did not require the exclusion of Mr. Shepherd's in-court identification testimony. The learned trial court properly permitted the jury to consider this witness's trial testimony and make its own judgment as to the weight it was to be given.

■ Appellant also challenges some of the questions by the prosecutor relating to the propriety of the on-the-street confrontation between the witness Shepherd and the appellant. Appellant argues that these questions were designed to impugn the integrity of his counsel and to improperly suggest that the witness's failure to identify Floyd on this occasion should have been ignored because of the impropriety of the event. For these reasons, it is asserted that the actions by the attorney for the Commonwealth constituted prosecutorial misconduct and that the request for a mistrial made by the defense at trial should have been granted.

The trial court avoided a judgment as to the propriety of the street confrontation and concluded that appellant's complaints did not warrant a grant of a new trial or curative instructions. The Commonwealth maintains that the procedure was improper and that it had the right to call that fact to the jury's attention. We do not believe that this issue turns on the propriety of defense counsel's actions.

It is clear that the defense has an absolute right to conduct a full and complete investigation of the facts of the case. American Bar Association Project on Standards for Criminal Justice, Standards Relating to Defense Function, § 4.1. Our adjudicative process is based upon an adversary proceeding and each side must have full access to all of the pertinent facts. However, both sides have the responsibility of conducting their investigation in such a manner that innocent potential witnesses are not unnecessarily exposed to retaliation or intimidation. Without commenting upon the wisdom of the instant procedure, we are satisfied that the effect of the Commonwealth's questioning in this regard did no more than to attempt to suggest the possible intimidation present to explain Mr. Shepherd's motive for failing to identify appellant under the circumstances.

The issue at trial was Mr. Shepherd's testimony that appellant resembled one of the assailants. The defense had the opportunity to present to the jury that the witness apparently did not recognize Floyd during this street confrontation. The Commonwealth had a corresponding right

to establish intimidation as an explanation for that failure. In proper perspective, we believe that the effect of the objected to questioning did no more than to suggest the possible intimidation as a reason for Mr. Shepherd's actions. For this reason we agree that the motion for mistrial was properly refused. While a curative instruction upon reflection may have assisted in focusing the issue, we cannot conclude that the refusal to do so requires a reversal of the conviction. The issue was relatively clear and there is no reason to believe that the jury misunderstood the questions presented.

Appellant also argues that a mistrial was required when his counsel became a witness for the defense. This situation was occasioned by the following factual situation. During the testimony relating to Mr. Shepherd's reaction to meeting Mr. Floyd on the street, a question was raised as to whether Mr. Shepherd may have been misled as a result of certain statements allegedly made to him by counsel for appellant. Since there was a period of time when the alleged statements may have been made where only counsel and Mr. Shepherd were present, the defense determined that it was necessary for trial counsel to testify as to his recollections of the event.

Unquestionably, the participation of counsel as a witness in the trial is to be discouraged. There are a number of concerns that arise where counsel becomes involved in the trial as a witness.[3] It has been suggested that once he becomes a witness his personal credibility is placed at issue before the jury and this may lessen his effectiveness as an advocate. Code of Professional Responsibility EC 5–9 (1980); *Miller Electric Const., Inc. Devine Lighting Co.*, 421 F.Supp. 1020, 1021 n. 3 (W.D.Pa.1976); *Commonwealth v.*

**3.** The problem of counsel becoming a witness in a trial has engendered much consideration. Poteat, Disqualification of Counsel Under the Advocate-Witness Rule: Fair or Futile, 48 U. of Cinn.L.Rev. 794 (1979); Note, The Advocate-Witness Rule: If Z Then X But Why?, 52 N.Y.U.L.Rev. 1365 (1977); Note, The Attorney as Both Advocate and Witness, 4 Creighton L.Rev. 128 (1970); *See generally:* 52 A.L.R.3d 887.

*Rondeau*, 79 Mass. 1668, 392 N.E.2d 1001, 1005 (1979). It has also been indicated that his involvement as a witness for his client causes him to be more easily subject to impeachment for interest and thus lessens his effectiveness as a witness. *Id.* On the other hand, his participation as a witness may cause his client's side to gain an unfair advantage, because of opposing counsel's reluctance to aggressively attack his credibility. *Id.*

This Court has on numerous occasions questioned the practice of an attorney appearing as both an advocate and witness in the trial of a case. *In re Wertman Estate*, 462 Pa. 195, 340 A.2d 429 (1975); *Weiherer v. Werley*, 422 Pa. 18, 221 A.2d 133 (1966); *Coulter Estate*, 406 Pa. 402, 178 A.2d 742 (1962); *Security Trust Co. v. Stapp*, 332 Pa. 9, 1 A.2d 236 (1938). The concern about the testifying advocate has been expressed by Professor Wigmore:

> ...The grounds of apprehension is not that lawyers as witnesses may distort the truth in favor of the client, but that the public will *think* they may, and that the public's respect for the profession and confidence in it will be effectively diminished...

G. J. Wigmore, Evidence § 1911 (Chadbourn Rev. 1976). Another authority has provided the following observations:

> ...To the extent that a client's case is proffered through testimony of his advocate, it is presented through testimony of an interested witness who will be subject to impeachment on that account, therefore, the diminished credibility of his testimony may hamper his courtroom efforts as advocate. Once his credibility is questioned, the advocate must convince a skeptical jury of the merits of his client's case. The attorney who is also a witness might deprive the client of both a credible witness and an effective advocate, and harm his client's case.

Another rationale asserted by supporters of the rule, contrary to the disqualification-by-interest reasoning, is that an advocate's appearance as a witness places the opposing party at a disadvantage because jury or judge might place too much weight on the testifying lawyer's closing arguments. A related rationale is that where an

attorney has testified, opposing counsel, as a matter of professional courtesy, might be hesitant to cross-examine a fellow member of the bar as harshly as he would a lay witness.

Proteat, *Disqualification of Counsel Under the Advocate-Witness Rule: Fair or Futile*, 48 U. of Cinn.L.Rev. 794, 797–798 (1979) (footnotes omitted).

The possible inconsistency of the role of an advocate and of a witness has occasioned rules of professional responsibility governing when counsel may participate as a witness.[4]

■ Our present concern is whether the procedure followed in this case deprived appellant of a fair trial. We are

---

4. 1. Disciplinary Rules 5–101 and 5–102 of the Code of Professional Responsibility provide in pertinent part as follows:

DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

\* \* \* \* \* \*

(b) A lawyer shall not accept employment in contemplated or pending litigation if he knows or it is obvious that he or a lawyer in his firm ought to be called as a witness, except that he may undertake the employment and he or a lawyer in his firm may testify:

(1) If the testimony will relate solely to an uncontested matter.

(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.

(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or his firm to the client.

(4) As to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case.

DR 5–102 Withdrawal as Counsel When the Lawyer Becomes a Witness.

(A) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4).

(B) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm may be called as a witness other than on behalf of his client, he may continue the representation until it is apparent that his testimony is or may be prejudicial to his client.

satisfied that the learned trial judge wisely exercised his discretion in a most difficult situation. Here the occasion for counsel's participation arose late in the trial. Counsel in fact took the stand after two weeks of trial. The court was faced with a decision of either preventing counsel from testifying, in which event the defense would have been denied the only witness available to prove the point at issue, or creating the present situation by allowing his testimony. Obviously, faced with these two options, the decision to allow counsel to testify was in appellant's best interest.

Appellant concedes that it was in the best interest of the defense that counsel elected to take the stand. "Indeed, it was proper for counsel to take the stand and, in fact, mandatory to protect his client's interest." Appellant's brief, page 26. However, it is now argued, when the need for counsel's participation became apparent appellant's motion for a mistrial should have been granted. Counsel was the last witness in a relatively protracted trial. The subject matter of counsel's testimony was directed to a collateral issue and did not go to the heart of the case. The acceptance or rejection of his testimony by the jury was not necessarily critical to the decision to be reached in the matter. Under these circumstances, the decision to continue with the trial and to reject the requested motion for a mistrial was clearly reasonable.

When counsel concluded his testimony,[5] the court directed counsel to resume his role as appellant's trial attorney. The question thus arises whether appellant was prejudiced. In considering the matter we must review the options open to the court at that point. We have already indicated that the court properly concluded that the trial should not have been aborted. Thus two alternatives were present. First, to recess the trial until new trial counsel could prepare to undertake the task of concluding the trial; second, to proceed as the trial court here decided. The problems involved in the first option are evident. Since

5. Once the trial judge permitted appellant's counsel to be a witness, he appointed new counsel to handle the examination.

counsel was the last witness, new counsel would have been required to familiarize himself with virtually a complete trial record before he could undertake the summation to the jury. During this period, the jury would be subject to distractions and a diminution of their recollection of the testimony that had been presented to them. Despite new counsel's good faith effort to familiarize himself with the record, he could not possibly obtain the flavor of the trial from a cold record. Weighing the pitfalls involved in the first alternative, we accept the trial court's judgment in directing that original counsel should have been permitted to present closing arguments.[6]

We realize that the fact that the trial judge followed the wisest course available is not the final answer, if in fact that choice denied the accused a fair trial. Here no actual prejudice has been demonstrated. Moreover, as the text writers cited above have indicated, it is not clear whether this type of situation prejudices or unduly aids the side in question. *See e. g. United States v. Birdman,* 602 F.2d 547 (3d Cir. 1979); *United States v. Torres,* 503 F.2d 1120 (2d Cir. 1974); *United States v. Pepe,* 247 F.2d 838 (2d Cir. 1957). Since we have concluded that the trial court wisely selected the options available, that there is no suggestion that this situation was deliberately contrived by the Commonwealth, and that no demonstrable prejudice can be identified, we will not disturb an otherwise errorless trial on the nebulous possibility that counsel's dual capacity may have in some way adversely affected his client's cause.[7]

Accordingly, the Judgments of Sentence are affirmed.

**6.** The trial judge gave careful curative instructions to the jury that counsel's two roles of advocate and witness were separate and distinct, and that the jury had to evaluate separately, using different standards, counsel's testimony and argument.

**7.** Appellant further contends the trial court erred: (1) in commencing jury selection prior to the disposition of a pre-trial motion to suppress identification in order to meet the requirements of Rule 1100; (2) in ruling that the prosecution could question appellant's proposed character witness concerning appellant's earlier, unrelated arrest for murder while a juvenile; in confining appellant to the face of the arrest and/or search warrant in eliciting testimony as to a determina-

ROBERTS, J., filed a concurring opinion.

KAUFFMAN, J., concurred in the result.

ROBERTS, Justice, concurring.

I concur in the result, believing that, with only closing arguments remaining, the ten-day continuance requested by counsel was unreasonably long and that the court's denial of the request was thus not an abuse of discretion.

tion of probable cause; (4) in instructing the jury on flight, without a definition of flight; and (5) in refusing to arrest the judgment of sentence for criminal conspiracy on the ground of insufficiency of the evidence or because the alleged co-conspirator was acquitted before appellant was sentenced. After a thorough review of the briefs and record in this case, we have concluded that these contentions of appellant are without merit.