J-S37011-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| HASAAN HATCHER | : | |
| | : | |
| Appellant | : | No. 2418 EDA 2017 |

Appeal from the PCRA Order July 21, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0006134-2010

BEFORE:   OLSON, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED OCTOBER 09, 2018**

Appellant, Hassan Hatcher, appeals *pro se* from the order entered on July 21, 2017, dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

We briefly summarize this case as follows.  On May 10, 2011, a jury convicted Appellant of aggravated assault and conspiracy.[1]  On September 9, 2011, the trial court sentenced Appellant to an aggregate term of 10 to 20 years of imprisonment.  We affirmed Appellant's judgment of sentence on June 5, 2013.  **See Commonwealth v. Hatcher**, 2013 WL 11262119 (Pa. Super. 2013) (unpublished memorandum).[2]   Our Supreme Court denied further review.  **See Commonwealth v. Hatcher**, 77 A.3d 636 (Pa. 2013).

---

[1] 18 Pa.C.S.A. §§ 2702 and 903.

[2] Our decision provides a detailed recitation of the facts of this case.

---

*   Former Justice specially assigned to the Superior Court.

Appellant filed a *pro se* PCRA petition on December 9, 2014. The PCRA court appointed counsel to represent Appellant and appointed counsel filed an amended PCRA petition on May 17, 2016. Counsel filed two subsequent amended PCRA petitions on September 1, 2016 and February 2, 2017. On February 24, 2017, the PCRA court issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss Appellant's various PCRA petitions and amendments. On March 15, 2017, Appellant filed a *pro se* response, alleging PCRA counsel's ineffectiveness and further requesting that the PCRA court appoint new counsel or, alternatively, allow Appellant to proceed *pro se*. On July 21, 2017, the PCRA court permitted Appellant to proceed *pro se*, and, ultimately, denied Appellant relief.[3] This timely appeal followed.[4]

On appeal, Appellant presents the following *pro se* issues for our review:

1. Did the PCRA court err in denying relief in light of affidavit evidence substantiating that trial counsel was ineffective for failing to litigate a motion to suppress and object to an in-court identification at trial, which was the result of a pretrial live line[-]up identification so suggestive, unreliable, and conducive to misidentification as to taint the conviction?

---

[3] Before permitting Appellant to proceed *pro se*, the PCRA court held a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998) ("When the waiver of the right to counsel is sought during PCRA review, an on-the-record determination should be made that the waiver is knowing, intelligent, and voluntary.").

[4] Appellant filed a *pro se* notice of appeal on July 31, 2017. On August 7, 2017, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on August 15, 2017. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on September 29, 2017.

2. Did the PCRA court err in denying relief, where Appellant presented newly discovered recantation evidence during the [PCRA] proceeding substantiating that the [C]ommonwealth violated his due process rights by presenting false testimony and fabricated evidence at trial, which so undermined the truth determining process that no reliable adjudication was possible?

3. Did the PCRA court err in denying Appellant's motion for appointment of new counsel, where PCRA counsel was ineffective for waiving [Appellant's claim based on recantation evidence] by failing to develop and cite case law in support of the claim in light of newly discovered evidence [demonstrating that] the [C]ommonwealth violated Appellant's due process rights by presenting false testimony and fabricated evidence at trial, which so undermined the truth-determining process that no reliable adjudication was possible?

4. Whether Appellant has been denied effective review because of the loss and/or failure to certify and transmit essential portions of ordered transcripts, exhibits submitted during trial, and affidavits necessary for a determination of the issues raised on appeal?

Appellant's Brief at 6 (footnote and suggested answers omitted).

In his first issue presented, Appellant argues that trial counsel was ineffective for failing to seek suppression of the victim's in-court identification of Appellant at trial. *Id.* at 14-20. Appellant claims that the victim's identification of Appellant was based on suggestive and unreliable influences that occurred immediately prior to the preliminary hearing and before trial. More specifically, Appellant claims the police exposed the victim to "photo arrays containing [Appellant']s mug shot and other evidence collected from the crime scene by police, such as PNC Bank ATM photographs and live streaming video footage from [a] liquor [store]" in an effort to encourage the victim to identify Appellant. *Id.* at 14. Appellant also maintains that before

the start of the preliminary hearing, Appellant and his co-defendant were brought into court and the victim was influenced by his wife to choose Appellant as a participant in the shooting. Relying on affidavits from his family members who were present for the preliminary hearing, Appellant suggests that the victim and his wife "sat together and actually discussed [Appellant's] identity while viewing him" before the preliminary hearing. *Id.* at 16. Appellant argues that the victim was not able to identify Appellant as a participant in the shooting when police presented the victim with photographs at the hospital 24 hours after the incident. *Id.* at 14. Accordingly, Appellant contends that "[g]iven [the victim's] initial failures to identify, followed by a later positive in-court identification – [the victim's] identification [was] based on his improper exposures to [Appellant], rather than his memories of the crime." *Id.* Appellant also challenges the PCRA court's determination that there was an independent basis for the victim's identification. *Id.* at 17-20.

Our standard of review is as follows:

Our standard of review of an order denying a PCRA petition is limited to an examination whether the PCRA court's determination is supported by the evidence of record and free of legal error. We grant great deference to the PCRA court's findings, and we will not disturb those findings unless they are unsupported by the certified record.

\* \* \*

The law presumes counsel has rendered effective assistance, and the burden of demonstrating ineffectiveness rests with an appellant. To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct

- 4 -

pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

*Commonwealth v. Holt*, 175 A.3d 1014, 1017–1018 (Pa. Super. 2017).

Regarding identification, our Supreme Court has determined:

A court must assess the reliability of an out-of-court identification by examining the totality of the circumstances. A pre-trial identification violates due process only when the facts and circumstances demonstrate that the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. [Where an initial one-on-one confrontation between the accused and the identifying witness occurs in court, identification evidence derived therefrom is not automatically unreliable. *See Commonwealth v. Floyd*, 431 A.2d 984, 987 (Pa. 1981).]

Initial equivocation does not render later identifications constitutionally unreliable *per se.*

\*      \*      \*

[If a pre-trial identification is tainted, "the subsequent in-court identification will be admissible if there exists an independent basis for the identification." *See Commonwealth v. Abdul–Salaam*, 678 A.2d 342, 349 (Pa. 1996).] To determine whether a sufficiently independent basis for the identification exists, a court must consider: (1) the opportunity of the witness to view the suspect at the time of the offense; (2) the witness' focus or attention upon the suspect; (3) the accuracy of the witness' description of the suspect; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

*Commonwealth v. Johnson*, 139 A.3d 1257, 1278–1279 (Pa. 2016).

On Appellant's first issue, the PCRA court concluded:

> Here, there was more than ample evidence of an independent basis for the in-court identification. Accordingly, a [pre-trial] line-up was not required. On the day the victim was shot, he heard [Appellant] say, "I think that's him. I think that's him." Thereafter, the victim and [Appellant] stood face to face at which time [Appellant] displayed [a] firearm tucked in his waistband. The victim saw [Appellant's] face as [Appellant] raised his shirt, exposing a gun handle. Under these conditions, [including] a face-to-face confrontation, the victim's in-court identification of [Appellant] was sufficiently reliable to admit into evidence. Thus, there was no basis to suppress [Appellant's] in-court identification. Consequently, [Appellant's] claim lacks merit and cannot afford him relief. A motion to suppress would have been baseless and counsel cannot be found ineffective for failing to file a meritless claim.

PCRA Court Opinion, 10/29/2017, at 10-11 (record and case citations omitted).

Upon review, we agree that Appellant is not entitled to relief. Here, the facts and circumstances do not demonstrate that any pre-trial identification procedures were so impermissibly suggestive that they gave rise to a substantial likelihood of irreparable misidentification. Initially, we note that the police prepared a photo array for the victim to examine at the hospital following the shooting. N.T., 5/4/2011, at 210. The victim was not able to identify anyone from that array. *Id.* However, Appellant's photo was not contained in the sole photo array examined by the victim. *Id.* at 234-235. As such, the police did not suggest Appellant's identification to the victim in an impermissible line-up or photo array. Equally important, the victim's failure

to identify Appellant in the photo array does not diminish the later in-court identification since Appellant's photo was omitted from that array.

Furthermore, while Appellant baldly contends that the police showed the victim Appellant's mugshot, photographs, and live video footage of the incident prior to identifying Appellant, it is not entirely clear from the record when, or under what conditions, the victim was shown any of these items. The victim acknowledged that he was not shown "the actual videos, but pictures and photos." N.T., 5/4/2011, at 15. Appellant fails to support his current claim with evidence that the police suggested Appellant's identity to the victim while he viewed such evidence before trial.

Moreover, we agree with the PCRA court's assessment that even if there were a tainted identification procedure, either at the preliminary hearing or before trial, there was an independent basis to admit the victim's in-court identification. At trial, the victim testified that Appellant left him threatening voicemail messages prior to the shooting. N.T., 5/4/2011, at 160. Based on those messages, the victim recognized Appellant's voice right before the shooting. *Id.* at 45, 85-87, and 160. The victim also testified that he stood face-to-face with Appellant and Appellant showed the victim a firearm tucked into his waistband. *Id.* at 45-46, and 103-109. The victim first identified Appellant at the preliminary hearing, approximately one month after the shooting. *Id.* at 126. At trial, the victim testified that he was 100% certain that Appellant was the person who made threatening telephone calls and the

same person who approached him with a gun in his waistband on the day of the incident. *Id.* at 161. As such, we agree that the in-court identification was reliable and, thus, there is no merit to Appellant's claim that counsel was ineffective for failing to move to suppress identification evidence.

Finally, we conclude that Appellant failed to prove that he was prejudiced by the victim's identification. The Commonwealth presented evidence of prior altercations with the victim at Appellant's home, regarding cellular telephone bills. Thus, the Commonwealth offered the jury a plausible, retaliatory motive. Moreover, the victim's wife witnessed the shooting and positively identified Appellant's brother and co-defendant as the shooter. Multiple witnesses testified that the shooter and Appellant fled the scene together in a gray Dodge Magnum. Upon investigation, police recovered a gray Dodge Magnum near Appellant's residence. The title to the vehicle listed Appellant and his mother as co-purchasers. N.T., 5/4/2011, at 215. Furthermore, the Commonwealth elicited testimony that Appellant subsequently threatened the victim and his wife during a pre-trial conference. *Id.* at 112-124. Appellant called the victim "a pussy" for testifying against him and said, "I should have got you when I got the chance." *Id.* at 75-75, and 124. Hence, there was additional, overwhelming evidence linking Appellant to the crime. As such, we agree that Appellant's first claim fails.

Appellant's second and third issues are inter-related claims pertaining to purported newly discovered evidence based on an affidavit from

Commonwealth witness, Maisie Suarez. As such, we will examine those issues together. For both issues, Appellant relies on an affidavit dated January 18, 2017, wherein Commonwealth trial witness, Maisie Suarez, recanted and clarified several portions of her trial testimony. *Id.* at 28. The thrust of Appellant's argument is that he is entitled to relief because the Commonwealth procured Suarez's trial testimony knowing that it was false. Specifically, in his second issue presented, Appellant argues that PCRA counsel was ineffective for failing to develop the newly discovered evidence argument in Appellant's second supplemental PCRA petition, and he should have received new counsel. *Id.* at 21. In his third issue presented, Appellant argues the merits of his after-discovered evidence claim based upon the Suarez affidavit. Appellant's Brief at 27-32. He claims that he is entitled to a new trial as a result.

> To obtain a new trial based on after-discovered evidence,
>
> the defendant must prove, by a preponderance of the evidence, that the evidence: (1) could not have been obtained before the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach a witness's credibility; and (4) would likely result in a different verdict.

*Commonwealth v. Murray*, 174 A.3d 1147, 1153 (Pa. Super. 2017). Recantation testimony is one of the least reliable forms of proof, particularly when it constitutes an admission of perjury. *Commonwealth v. Padillas*, 997 A.2d 356, 366 (Pa. Super. 2010).

Upon review, the Suarez affidavit and Appellant's after-discovered evidence claim were presented to the PCRA court in a counseled, second supplemental PCRA petition filed on February 2, 2017 and are contained in the certified record. As such, we conclude that the issue was squarely before the PCRA court. In denying relief, the PCRA court stated:

> [Appellant] presented an affidavit from [Maisie] Suarez, a Commonwealth witness at trial. In her affidavit, this witness claimed she could not remember if there were two or three men responsible for shooting the victim. However, at trial, the witness identified [Appellant] as the driver of the Dodge Magnum and his brother as the shooter. The witness also testified that the driver had a gun in his hand [and] she heard about three to four gunshots. When the shooting stopped, she saw the victim collapse next to her car. No relief can be granted on this claim. Even if the witness's recantation was admitted, [Appellant] cannot show that it would have resulted in a different outcome. Given the overwhelming evidence presented by the Commonwealth, which included eyewitness testimony from the victim's wife, a former paramour of [Appellant], Suarez's recanted testimony would not lead to a different result if a new trial was granted.

PCRA Court Opinion, 10/29/2017, at 12 (record citations omitted).

We agree. Upon review of Suarez's affidavit, we discern she did not recant any trial statements that implicated Appellant in the shooting. Suarez still identified Appellant's brother and co-defendant as the shooter. Suarez now claims that "a thinner guy" was driving the Dodge Magnum. Appellant contends that at the time of the shooting he was 280 pounds and, therefore, he was not thin and it could not have been him. Appellant's Brief at 29. Upon review, however, the slight deviations from Suarez's trial testimony as reflected in her subsequent affidavit would only serve to impeach Suarez at

- 10 -

trial on minor inconsistent statements. Moreover, Suarez still claims that Appellant was at the crime scene when the victim was shot, despite now claiming that there were additional people present. Such evidence simply does not exculpate Appellant or otherwise support Appellant's claim that the Commonwealth presented knowingly false evidence at trial. Moreover, as discussed at length above, there was additional, overwhelming evidence tying Appellant to the crimes. For this additional reason, Appellant has failed to show that the outcome of trial would have been different with Suarez's recanted testimony. Accordingly, the PCRA court did not err in denying Appellant relief on his second and third claims presented.

Finally, Appellant argues that effective appellate review was impossible in this case because the certified record is incomplete. Appellant argues that "the inventory list of record documents does not reflect that the preliminary hearing transcript dated May 3, 2010, trial transcript[s] dated May 4 through 10, 2011, PNC Bank ATM photographs dated April 2, 2010, police photo array dated April 2, 2010, Wine and Spirit video footage dated April 2, 2010, and PCRA hearing transcript dated July 21, 2017, [were] certified and forwarded to the appellate court." Appellant's Brief at 35.

We have held:

Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty.

\*          \*          \*

- 11 -

> In the absence of specific indicators that a relevant document exists but was inadvertently omitted from the certified record, it is not incumbent upon this Court to expend time, effort and manpower scouting around judicial chambers or the various prothonotaries' offices of the courts of common pleas for the purpose of unearthing transcripts, exhibits, letters, writs or PCRA petitions that well may have been presented to the trial court but never were formally introduced and made part of the certified record. If, however, a copy of a document has been placed into the reproduced record, or if notes of testimony are cited specifically by the parties or are listed in the record inventory certified to this Court, then we have reason to believe that such evidence exists. In this type of situation, we might well make an informal inquiry to see if there was an error in transmitting the certified record to this Court. We might also formally remand the matter to the trial court to ascertain whether notes of testimony or other documentation can be located and transmitted. If a remand is necessary, it is appropriate to direct the trial court to determine why the necessary documentation was omitted from the certified record.

*Commonwealth v. Preston*, 904 A.2d 1, 7–8 (Pa. Super. 2006).

Initially, we note that Appellant filed a *pro se* application to remand the matter to the PCRA court for the correction and modification of the record with this Court. By *per curiam* order entered on November 13, 2017, we denied Appellant's request "without prejudice to Appellant's right to apply directly to the PCRA court for relief for purposes of viewing, correcting and/or supplementing the certified record." *Per Curiam* Order, 11/13/2017. To date, we have not received any supplementation of the record. However, because the PCRA court, the trial court, and this Court on direct appeal cited the various notes of testimony, we informally located them and incorporated them into the record. Moreover, despite his claim to the contrary, the Suarez affidavit

was attached to the second supplemental PCRA petition and contained in the certified record. Accordingly, our appellate review was unhampered and we conclude that Appellant is not entitled to relief on his final claim.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/9/18